Nash, J.
 

 The only question presented in this case is as to the true construction of the contract between the parties. This paper was executed on the 9th of September, 1841, and the action was brought on the 19th of November, 1842, the plaintiff having given the defendant notice to quit in July preceding. On the trial of the cause in the Superior Court of Chatham, it was contended by the defendant, that this was a tenancy from year to year, and that the tenancy could not be put an end to by the lessor, without giving to the tenant six months’ notice to quit; and his Honor, who presided, being of this opinion, the plaintiff submitted to a nonsuit and appealed to this Court. In the opinion of his Honor we think there was error. The true inquiry is, not as to the nature of the estate or interest, which the defendant acquired in the premises, but whether, by the contract, the plaintiff could bring this action without a previous notice to quit. We
 
 *294
 
 think he could, or, if any notice was necessary, that which was given was sufficient — Anciently, where a man entered into land, with the consent of the owner, and no express tjme wag pixijte(j f01, p.g termination, it was, by the strict letter of the law, a tenancy at will, and either party might put an end to it at his pleasure. This tenancy was fraught with much mischief; and its operation was often oppressive and unjust to the tenant, for he might be turned out of possession before his crop was fit for harvesting, and, though the law gave him the right to enter and carry off his crop when ripe, still it subjected him to great inconvenience. It was also contrary to the policy of the State, which is in nothing more concerned than in protecting and cherishing the proper cultivation of the soil. Courts of justice, therefore, early viewed with strictness- an estate fraught with so much injury to the interests of agriculture. Loud Kenyon, in the .case of
 
 Marlin
 
 v Walts, 7 Term 79, says, “as long ago as the time of the year books, it was held, that a general occupation was an occupation from year to year, and the tenant could not be turned out without reasonable notice.” It is now considered as settled law, that wherever the relation of landlord and tenant exists,
 
 without any limitation as to time,
 
 such tenancy shall be from year to year, nor shall either party be at liberty to put an end to it, unless by a regular notice.
 
 Legg
 
 v
 
 Strudwich, 2
 
 Salk.
 
 414
 
 —Timmins v
 
 Rowlinson,
 
 Burr.
 
 1609
 
 — Martin v
 
 Walts,
 
 7 Term Rep. 79. And it is also settled, that this notice must be given six months before and ending with the period at-which the tenancy commenced.
 
 Doe
 
 v
 
 Porter, 2
 
 Term R. 3. The Courts, therefore, lean against construing leases to be at will, and in favor of their being from year to year; and so strongly has that disposition heen felt, that it has been decided, in a Court of very high authority, that, at this day, a tenancy at will cannot be created, 7 Johns, Rep. 3. This, however, is carrying the doctrine too far. Both in England and in this State it has been held, and is now settled, that an estate at will, strictly so speaking, can be created, 5 Tyrw. 753, and
 
 *295
 
 so by express contract between the parties.
 
 Richardson
 
 v
 
 Lavgridge,
 
 4 Taunt.
 
 148
 
 —Humphries v
 
 Humphries,
 
 3 Ired. 363. In this last case it is ruled, that, though from policy’every occupation of land is,
 
 prima facie,
 
 deemed a tenancy, from year to year, yet the owner may shew, that it is only a tenancy at will, or any other tenancy, determinable at a particular time or on a particular event, by the express agreement of the parties. In other words, that the contract between the parties must govern and ascertain their respective rights. In this case, the contract sets forth, that the tenancy was to commence on the 26th of October 1841, at the yearly rent of $14 for one year,- and at that rate for any shorter time; it then stipulates, in case Mr. McIntosh shall desire to move the house before October 1842, he is to pay only for the time he occupies the hortse or the lot at the rate of $14 for one year. We think these stipulations clearly fix a terminus for the lease, to wit, the 26th of October 1842. There are several ways, by which the relation of landlord and tenant may terminate, without any notice to quit: as where, by the agreement of the parties, notice is waived, or, when its determination is made to depend upon some particular event, as the death of a particular individual; here the death of the individual is in itself a termination of the lease, and the estate of the lessee ceases. So, where its determin-tiorx is fixed by the effluxion, of time, as where it is to terminate at a particular period. In neither of these eases is any notice to quit necessary, and the lessor, may, upon the expiration of the time specified,- or the happening of the particular event, immediately enter upon the lessee.
 
 Cobb
 
 v
 
 Stokes,
 
 8 East. 358,
 
 Messenger
 
 v
 
 Armstrong,
 
 1 Term Rep. 54. On behalf of the plaintiff it was urged, that this was a tenancy at will, because, by the terms of the contract, the defendant had a right to put an end to it at his pleasure — and that the law gave the lessor of the plaintiff the same right, which he had exercised by giving the defendant two months’ notice to quit. Whether this was a tenancy
 
 *296
 
 at will, or 0116 whose termination was by the contract fixed determined; we are of opinion it was not a tenancy from year to year, and that, in either case, the opinion of his jjonor was erroneous. The plaintiff was entitled to maintain
 
 his
 
 action, as he did not commence
 
 it
 
 before
 
 the 26th
 
 of October 1842, one year for the commencement of his lease.
 

 Per Curiam, Judgment reversed and venire de novo awarded.