[Filed November 4, 1889.]

# GUS. ROSENBLAT, APPELLANT, *v.* R. S. PERKINS, RESPONDENT.

While a verbal lease of real property for a longer term than one year is void by the statute of frauds, so that neither party thereto can enforce its terms as against the other, yet if the lessee enter into possession of the property under the lease, and pay his rent to the lessor, who accepts the same, obligations may thereby be created in reference to the occupation of the property that will be legally binding upon the parties.

The acts of the parties under such a lease may create in the lessee an estate from year to year.

To terminate an estate from year to year by notice requires the giving of such a notice as is prescribed in § 2987, Code of General Laws of Oregon.

The provisions of the forcible entry and detainer act applicable to the removal of a tenant (§ 3519, Code of General Laws of Oregon) can only be enforced as against a tenant who is wrongfully in possession of the demised premises, or who is doing or neglecting something in violation of his duty to his landlord, in view of the relations existing between him and the latter, and a remedy under said Act cannot be taken against a tenant from year to year, until the tenancy is determined by notice as provided in said section 2987, or by an agreement between the parties.

A tenant in possession of demised premises, without any written lease or agreement therefor, cannot be dispossessed under the said Act, unless he is in by wrong.

APPEAL from a judgment of the circuit court for the county of Multnomah, rendered upon an appeal to that court from a judgment of a justice of the peace, in proceedings of forcible entry and detainer.

The appellant instituted the proceeding in the justice's court to remove the respondent from certain premises, consisting of real property situated in the city of Portland, county of Multnomah; claiming that the latter unlawfully withheld the same from him. The justice of the peace gave the appellant judgment for the restitution of the premises; from which the respondent appealed to the said circuit court, where the case was tried without a jury. Upon said trial the circuit court found the following facts and conclusions of law:

## FINDING OF FACTS.

1. That the respondent and one Holton, under the name of Holton & Perkins, occupied the premises in controversy under a written lease made by S. Rosenblat, the appellant's testator, from November 1, 1885, till October 31, 1887, at which date said written lease, by its terms, expired.

2. That the respondent alone, said Holton having ceased his connection with the respondent, remained in possession of said premises, as tenant from month to month, at a rent reduced from $45 a month to $37.50 a month, till about or on the ninth day of March, 1888.

3. That on or before said ninth day of March, 1888, the said S. Rosenblat, who was the owner of said premises, entered into a verbal agreement with respondent whereby the said S. Rosenblat orally leased to the respondent, and the respondent orally agreed to take and use, said premises for a term to commence March 10, 1888, and to terminate on the twenty-eighth day of October, 1890, at the monthly rental of $37.50 a month, with a proviso that if the said S. Rosenblat, or his heirs, should proceed to erect on said premises a brick building, or if said S. Rosenblat should sell said premises,—neither of which said events had occurred when this action was begun,—then respondent should quit and surrender up to said Rosenblat, or his heirs and assigns, said premises. That respondent remained in possession of said premises, pursuant to said oral agreement with appellant's testator, paying the stipulated rent of $37.50 per month, which was accepted by appellant; and that he is still in possession, claiming under said agreement and oral lease.

4. That on the ninth day of March, 1889, the appellant caused to be served on the respondent, at Portland, Oregon, a written notice to quit and surrender up said premises to appellant on the thirty-first day of March, 1889; and on the first day of April, 1889, appellant demanded possession from the respondent, which the latter refused to deliver, and declared to appellant's agent, who served said notice to quit, that he would not quit nor surrender up said premises without litigation.

### CONCLUSIONS OF LAW.

1. That the respondent, by virtue of, and under the above oral agreement or lease, took and had in said premises an estate as tenant from year to year.

2. That no sufficient notice to quit was served on respondent.

3. That respondent was not guilty, and appellant was not entitled to the possession of the premises in controversy.

4. That respondent was entitled to judgment for costs and disbursements.

Upon which findings the judgment appealed from was entered.

*T. A. Stephens,* for Appellant.

*H. T. Bingham,* for Respondent.

THAYER, C. J.—The appellant's counsel has presented on the appeal two questions for the consideration of this court:

1. Did the respondent lease said property from the appellant's testator under a verbal lease from month to month, at a monthly rental of $37.50, as alleged in appellant's complaint?

2. Was there sufficient evidence to prove the making of the lease set out in respondent's amended answer? If there was, is not said alleged lease or agreement within the statute of frauds, and therefore void?

This court has nothing to do with the questions of fact involved in the counsel's inquiry. The circuit court found what the fact was in relation to that matter, and we have no right to review its findings, if supported by any evidence tending to prove it. Under the circumstances, we must regard the fact as having been proven, and consider its effect as a matter of law. The question for us to determine is, what are the legal relations of the parties under the facts as found by the circuit court? The main point in the case is as to the effect of the verbal agreement made between S. Rosenblat, appellant's testator, and the respondent, entered into on or about the ninth day of March, 1888, for the leasing of the premises, as stated in the third finding of facts, above set out. The only right as I understand, which the respondent had to the occupancy of the premises when the forcible entry and detainer

proceeding was begun against him arose out of said agreement, and the conduct of the parties which took place under it. Said counsel contends that the said verbal agreement was void by the statute of frauds, and that the respondent cannot claim any right to the possession of the premises under it. That such an agreement is void under subdivisions 1 and 6 of section 785 of the Civil Code, there can be no question. That is, the terms of the agreement could not be enforced. If either of the parties to it had gone into a court of justice, and undertaken to compel the other to comply therewith or to pay damages for a non-compliance with its terms, the court would unhesitatingly have said that it was void. So long as the parties to such an agreement remain inactive in regard to its execution, it is inoperative. But, on the other hand, where the parties acquiesce in the agreement, and proceed to carry out its terms, binding obligations may thereby be created. Thus, a verbal agreement to lease land for a longer term than one year is invalid in the outset; but if the tenant enter under it, pay rent, and remain longer than one year, with the assent of the landlord, a tenancy from year to year is thereby created, with all the rights and incidents which attach to that kind of tenancy. It would be unjust and fraudulent to permit the landlord, after agreeing that the tenant might enter and occupy his premises on condition of paying him rent, and the latter enters and complies therewith, to then treat the tenant as a trespasser. The statute which the appellant's counsel relies upon was not passed to enable land-owners to perpetrate frauds, or exercise bad faith. The agreement in such a case is void, at the option of the parties, or either of them; but if they both see fit to engage in the execution of its terms, and do acts under it, they may thereby establish such a relation between themselves as the law will recognize and enforce. Under the facts as found by the learned circuit court, the respondent clearly became a tenant of the premises in controversy from year to year. This view is in harmony with the decisions of this court in *Garrett* v. *Clark*, 5 Or. 464

and *Williams* v. *Ackerman*, 8 Or. 405, which I think laid down the true rule upon the subject. Under this view, the position of the appellant's counsel is untenable.

But how such a tenancy is terminated under our statute is a somewhat perplexing question. We have a general statute which provides as follows: "All estates at will or by sufferance may be determined by either party, by three months' notice, in writing, given to the other party, and when the rent reserved in a lease at will is payable at periods of less than three months, the time of such notice shall be sufficient if it be equal to the interval between the times of payment; and in all cases of neglect or refusal to pay the rent due on a lease at will, fourteen days' notice to quit, given in writing by the landlord to the tenant, shall be sufficient to determine the lease." § 2987, Code of General Laws of Oregon. This provision was adopted in 1854 by the Territorial legislature, and was continued in force by the terms of the constitution of the State. Then we have the forcible entry and detainer Act, adopted in 1866, which seems to have been thrust into the statute without regard to its harmony or fitness with the other provisions thereof. Section 11 of that Act, which is § 3519 of the Code of General Laws of Oregon, provides as follows: "The following shall be deemed cases of unlawful holding, by force, within the meaning of this chapter [Act]: (1) When the tenant or person in possession of any premises shall fail or refuse to pay any rent due on the lease or agreement under which he holds, or deliver up the possession of said premises for ten days after demand made, in writing, for such possession; (2) when, after a notice to quit as provided in this chapter [Act], any person shall continue in the possession of any premises at the expiration of the time limited in the lease or agreement under which such person holds, or contrary to any condition or covenant thereof, or without any written lease or agreement therefor." The notice to quit, as provided in the Act, is required to be in writing, and to be served upon the tenant for the period of ten days before the commencement of the

proceedings to dispossess him, unless the leasing or occupation is for the purpose of farming or agriculture, in which case it must be served for the period of ninety days before the commencement thereof. Whether it was intended by this Act to change the mode of terminating estates by will or by sufferance as provided in the former statute, does not appear. It would seem, however, that an occupant might, in accordance with its provisions, be dispossessed by the owner of the premises while the relation of landlord and tenant still existed between them. The remedy given by the Act in such a case is eminently proper where the tenant has failed to pay the rent due upon the lease, or continues in possession contrary to a condition or covenant contained therein, or continues in possession at the expiration of the time limited in the lease. But to summarily remove him because he is holding without any written lease or agreement therefor, where his holding is lawful (as it might be and he have no written lease or agreement), would be an outrage upon justice. I think the Act only has in view the removal of a tenant who is in by wrong, or who is doing or neglecting something in violation of his duty to his landlord in view of the relation existing between him and the latter. The legislature certainly did not intend by it that a tenant rightfully in possession of the premises, and who had complied with the condition of the lease or agreement under which he held, although such lease or agreement was by parol, could be so dispossessed. The question as to the effect of the act upon the rights of the respondent herein was not discussed by counsel at the hearing, and I should not have noticed it had not its provisions, taken literally, have had so important a bearing upon the case. Estates from year to year continue for an uncertain number of fixed periods of time. Originally the fixed period of time was one year; but the term "year," as now used, is merely descriptive, and the estate includes tenancies from month to month, etc. If the rent reserved is annual, the fixed period of

XVIII. OR.—11.

time is a year, though the rent be payable at stated intervals during the year.

In case of yearly tenancies, the English rule requires six months' notice to determine the tenancy. In America, the length of time for the notice has been variously fixed by statute. Where the letting is for a less time than one year the period for notice is fixed by the manner of paying rent. If the rent is paid monthly, a month's notice is required. etc. If no notice is given, the tenancy continues for another term; and so on. The tendency of the courts is to construe all general or doubtful tenancies into estates from year to year; and parol leases which, under the statute of frauds, constitute estates at will, are turned into estates from year to year by the payment and acceptance of rent, or other circumstances indicating that that is the intention of the parties.

So, where the tenant holds over after the expiration of a lease for years, he will be considered as a tenant from year to year. 6 Amer. & Eng. Ency. Law, 888, 889. The definition here given of estates from year to year, and the description of their incidents, are sanctioned by the courts and writers of text-books. In order to terminate such an estate, notice must be given by one of the parties of an intention to determine it; and it follows that until such notice is given the tenant cannot be regarded as a wrong-doer. Such estates partake of the nature of an estate at will; and under the old rule, as said by this court in *Garrett* v. *Clark, supra.* "the tenancy would probably be deemed one merely at will." I think that it would require such a notice as specified in said section 2987, Code General Laws of Oregon, to determine them; and that, until such notice was given, no proceeding under the said forcible entry and detainer Act could properly be taken. This seems to have been the view entertained by the learned circuit court, and which, in my opinion, is correct.

The judgment appealed from will be affirmed.