Argued 20 July, decided 28 August, rehearing denied 4 December, 1905.

### WOLFER *v.* HURST.

80 Pac. 419, 82 Pac. 20.

FORCIBLE DETAINER—STAY BOND ON APPEAL—MEANING OF THE TERM " FINAL JUDGMENT."

1. The phrase " final judgment," used in Section 5754, B. & C. Comp., providing for an undertaking on appeal in actions of forcible detainer that shall secure twice the rental value of the property " until final judgment " in the case, means the last judgment that may be entered in any court to which the appeal may be finally prosecuted ; therefore, in such a case appealed from a justice's court, no new stay bond is required on a further appeal from the circuit to the supreme court.

FORCIBLE DETAINER—APPEAL FROM JUSTICE'S COURT.

2. Section 5754, B. & C. Comp., prescribing the undertakings to be given when judgments in forcible entry or detainer cases are given, impliedly authorizes appeals from judgments by justices of the peace in such cases.

FORCIBLE DETAINER—NECESSITY OF SERVING NOTICE TO QUIT.

3. The notice referred to in the second subdivision of Section 5755, B. & C. Comp., to be given by a landlord to a tenant, to quit the rented premises, is required to be given before the tenancy can be legally terminated, and therefore the giving and receiving thereof may be waived by the tenant. The giving of the notice is not part of the procedure by the landlord to recover possession.

From Marion : GEORGE H. BURNETT, Judge.

Action by Geo. J. Wolfer against W. S. Hurst and H. A. Hinkle to recover possession of real property. A motion to dismiss the appeal was overruled pursuant to an opinion by Mr. Justice MOORE, and the judgment appealed from was afterward affirmed, the opinion being written by Mr. Chief Justice WOLVERTON. The facts appear in the opinions.          MOTION OVERRULED : AFFIRMED.

---

Decided 10 April, 1905.

ON MOTION TO DISMISS APPEAL.

*Mr. Benjamin Franklin Bonham* and *Mr. Carey Fuller Martin* for the motion.

*Mr. Anderson M. Cannon, contra.*

MR. JUSTICE MOORE delivered the opinion of the court.

This is a motion to dismiss an appeal. An action of forcible entry and detainer was commenced in a justice's court of Marion County, to recover the possession of about 80 acres of land, and, the cause being at issue, was tried, resulting in a judgment for plaintiff as demanded in the complaint; and defendants appealed to the circuit court for that county, giving an undertaking therefor, and also an undertaking for the payment to plaintiff of twice the rental value of the premises from the rendition of the judgment until final determination of the action, if such judgment should be affirmed on appeal. The appeal was tried in the court to which the cause was taken, and a judgment for the restitution of the premises was rendered against the defendants, who on January 10, 1905, served and filed a notice of appeal, and gave and filed an undertaking therefor, and 18 days thereafter, without notice to plaintiff, secured an order of that court, but of a different department, fixing the amount of a stay bond, which they also gave, conditioned that they would not commit or suffer any waste, and if the judgment, or any part thereof, should be affirmed, they would pay the value of the use of the premises from the time of taking the appeal until the redelivery of the possession of the land, not exceeding the sum of $250. The bill of exceptions having been settled, certified and sent up, the motion referred to was interposed on the grounds that this court did not have jurisdiction of the cause, for that no undertaking for the payment of the rent of the premises was given within the time prescribed, and that no right of appeal exists from judgments rendered in actions of this kind.

1. Considering the objections to the jurisdiction in the order indicated, the statute relating to appeals in actions of forcible entry and detainer is as follows:

"If judgment be rendered against the defendant for the restitution of the real property described in the complaint, or any part thereof, no appeal shall be taken by the defendant from such judgment until he shall, in addition to the undertaking now required by law upon appeal, give an undertaking to the adverse party, with two sureties, who shall justify in like manner as bail upon arrest, for the payment to the plaintiff of twice the rental value of the real property of which restitution shall be adjudged from the rendition of such judgment until final judgment in said action, if such judgment shall be affirmed upon appeal": B. & C. Comp. § 5754.

An examination of the section of the statute quoted will show that the undertaking required to be given for the payment of the rent stipulates that the term for which the stay bond shall operate as indemnity for the use of the demanded premises is from the rendition of the judgment in the justice's court until final judgment is given in the action, if such judgment is affirmed. The term "final judgment" is generally used as a synonym for an appealable order, that is, one which not only affects a substantial right, but one which, in effect, determines the action in the court pronouncing the judgment: B. & C. Comp. § 547; *State* v. *Brown*, 5 Or. 119; *Basche* v. *Pringle*, 21 Or. 24 (26 Pac. 863). The term "final judgment," as used in the statute under consideration, cannot apply to the determination of the cause in the justice's court, for the language assumes that such judgment has been given therein, and provides that, on an affirmance thereof, the payment to the plaintiff of twice the rental value of the land of which restitution has been awarded shall be guaranteed by the terms of the supplementary undertaking. A fair interpretation of the phrase "until after final judgment in said action" means that the undertaking stipulating for the payment of the rent shall afford compensation to the plaintiff for the use of the premises from the time judg-

ment is rendered in the justice's court for the restitution of the land until the cause is finally determined on appeal. Such a construction of the statute would make the undertaking given for the payment of twice the rental value of the land effectual for all purposes until the judgment rendered in the justice's court becomes final either by an affirmance or a reversal thereof in the circuit or supreme court.

The object of the statute requiring the giving of a stay bond was evidently not designed to impose needless burdens upon the defendant when he appeals from a judgment rendered against him in a justice's court for the restitution of land of which he is in possession, but to secure to the plaintiff in such action the payment of the rent until the right to the possession becomes final, and, as the statute in effect so provides, no necessity existed for the giving of an undertaking to stay the enforcement of the judgment rendered in the circuit court, the undertaking given therefor in the justice's court as a condition precedent to the right of appeal being sufficient for that purpose.

2. The right to appeal from a judgment rendered in a justice's court in an action of forcible entry and detainer is not free from doubt. The section of the statute hereinbefore quoted is the only provision directly relating thereto. The Legislative Assembly of the Territory of Oregon passed an act January 12, 1854, creating courts of justices of the peace, conferring on that tribunal jurisdiction of such actions, and granting appeals from judgments rendered therein : Laws 1855, p. 286 et seq. An act was passed October 11, 1862, conferring upon county courts exclusive jurisdiction of actions of forcible entry and detainer, and allowing appeals from judgments given in such actions: Deady's Gen. Laws 1854–64, §§ 868–875. Justices' courts were invested with jurisdiction of such actions by an act passed October 24, 1866 (B. & C. Comp. § 5745 et seq.),

and the only right to review a judgment rendered therein is to be implied from the section of the statute which provides that no appeal shall be taken by the defendant, until he shall have given an undertaking to pay to the plaintiff twice the rental value of the premises of which restitution has been awarded, in addition to the ordinary undertaking for an appeal: B. & C. Comp. § 5754. In *Thompson* v. *Wolf*, 6 Or. 308, the court, in construing the act of October 24, 1866, and referring to a provision thereof now incorporated in B. & C. Comp. as section 5754, though the question was not involved, says: "By section 10, an appeal is allowed and must be taken to the circuit court." The dictum thus announced has been observed in the trial of appeals in this court in actions of forcible entry and detainer commenced in justices' courts in the following cases: *Taylor* v. *Scott*, 10 Or. 483 ; *Harrington* v. *Watson*, 11 Or. 143 (3 Pac. 173 50 Am. Rep. 465); *Aiken* v. *Aiken*, 12 Or. 203 (6 Pac. 682); *Danvers* v. *Durkin*, 14 Or. 37 (12 Pac. 60); *Belfils* v. *Flint*, 15 Or. 158 (14 Pac. 295); *Rosenblat* v. *Perkins*, 18 Or. 156 (22 Pac. 598, 6 L. R. A. 257); *Hislop* v. *Moldenhauer*, 21 Or. 208, (27 Pac. 1052) 2d Appeal, 23 Or. 119; *Smith* v. *Reeder*, 21 Or. 541 (28 Pac. 890, 15 L. R. A. 172); *Forsythe* v. *Pogue*, 25 Or. 481 (36 Pac. 571); *Twiss* v. *Boehmer*, 39 Or. 359 (65 Pac. 18). The right to appeal from such judgments has never been questioned until quite recently : *Heiney* v. *Heiney*, 43 Or. 577 (73 Pac. 1038); *McAnish* v. *Grant*, 44 Or. 57 (74 Pac. 396); *Dechenbach* v. *Rima*, 45 Or. 500 (77 Pac. 391, 78 Pac. 666). The judgment of an inferior court ought not to be reviewed unless the right to do so is clearly granted by statute ; but, where appeals have been unquestionably tried for such a length of time as to establish a method of procedure, the rule promulgated should not be changed without just cause, resulting from manifest injustice to the parties to actions : *Butler* v. *Smith*, 20 Or. 126 (25 Pac. 381); *Lewis* v. *Reeves*, 26 Or. 445 (38 Pac. 622).

It is difficult to discover how any unfairness can arise from reviewing a judgment given in a justice's court in an action of forcible entry and detainer, except the possibility of a reversal, which would reasonably show that such judgment was erroneous, and therefore unjust. The rule to be extracted from the cases decided by this court, to which attention has been called, is that an appeal from a judgment given in a justice's court in an action of this kind may be instituted and prosecuted to final determination by either party; but, if taken by the defendant, he must, in addition to the undertaking therefor, also give an undertaking for the payment to the plaintiff of twice the rental value of the premises of which restitution has been awarded.

As the right to an appeal in such cases is fairly to be inferred from the statute, and as the cause of justice would, in our opinion, be promoted by continuing the practice so long observed, the motion to dismiss the appeal is denied.

MOTION OVERRULED.

---

Decided 28 August, 1905.

ON THE MERITS.

For appellants there was a brief over the name of *Carson & Cannon,* with an oral argument by *Mr. Anderson M. Cannon.*

For respondent there was a brief with oral arguments by *Mr. Benjamin Franklin Bonham* and *Mr. Carey Fuller Martin.*

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

On the 1st of October, 1903, the plaintiff leased to defendants certain premises for the period of one year. The lease contained, among others, the following conditions, namely:

"And it is agreed that if any rent shall be due and un-
paid, or if default shall be made in any of the covenants
herein contained, then it shall be lawful for the said party
of the first part to reënter said premises and to remove all
persons therefrom; the party of the second part hereby
waiving any notice to quit or of intention to reënter under
the statute. And the said party of the second party cove-
nants * * that at the expiration of the said term or other
determination of this lease the party of the second part
will quit and surrender the premises hereby demised in as
good state and condition as reasonable use and wear thereof
will permit."

The defendants refusing to surrender at the end of their
term, the plaintiff instituted this action of forcible entry
and detainer. At the trial there was no proof of the giving
of any notice to quit on the part of the plaintiff, and the
defendants moved for a nonsuit, which being denied, plain-
tiff had judgment; hence this appeal.

It will be helpful to us if we take a retrospect of the
law of tenancies as it pertains to the necessity of demand
and notice for their termination. At common law a ten-
ancy at sufferance was created when a person came into
possession of land lawfully and held over wrongfully after
his estate had ended. · The tenancy was of a most shadowy
character, and the landlord could reënter and bring eject-
ment for possession without the necessity of prior demand
or notice to quit: 18 Am. & Eng. Enc. Law (2 ed.), 177,
180. A tenancy at will was more stable, and arose where
lands or tenements were let to hold at the will of either
party to the letting, by force of which the lessee was in
possession. It was not essential that the contract should
be express, but sufficient that it was implied, and there-
fore an estate by sufferance might be converted into a
tenancy by will, if the holding was of sufficient duration
as that the assent of the landlord to the holding, which
was at first wrongful, might be presumed. Thus a tenant

holding over after the expiration of a term might become a tenant at will by the implied assent of the owner: 18 Am. & Eng. Enc. Law (2 ed.), 182, 183. This estate was determinable by a demand for possession, such as indicated the landlord's intention that the tenancy should cease. Nor need the demand to have been express, but it might have been signified by acts tantamount thereto: 18 Am. & Eng. Enc. Law (2 ed.), 186, 187. Periodical tenancies, or, as they are commonly known, "tenancies from year to year," grew at an early date by judicial construction out of the old tenancies at will. These latter were attended with many inconveniences, to obviate which the courts raised an implied lease for a certain period, and ingrafted upon it a rule of law that the tenancy could not be terminated, even at the end of the period, without previous notice. Such tenancy could arise by express contract, while, upon the other hand, it might have arisen by implication, as, where a tenant held over after the expiration of a lease with the consent of the landlord and continued to pay a periodical rental, the law raised another term equivalent to the period of payment: 18 Am. & Eng. Enc. Law (2 ed.), 191, 192, 197. These tenancies were determinable by notice, the length of time of which to be given was according to whether the tenancy was strictly from year to year or less, as from quarter to quarter, or month to month, and the like. If from year to year, six months was required; if for a less term, shorter notice was sufficient; and such is the common law in force in the United States. This notice should expire on the terminal day: 18 Am. & Eng. Enc. Law (2 ed.), 202–204. The right to determine the tenancy by notice was an inseparable incident of the holding, and was exercisable by either the landlord or the tenant, being for the mutual benefit of both: Wood, Land. & Ten. p. 64, § 22. But the parties to such a tenancy could alter the notice neces-

sary to determine it, and could agree to a notice of less duration or period (18 Am. & Eng. Enc. Law, 2d ed., 205; Wood, Land. & Ten. § 33); or they might have waived it entirely by a writing under their hands: Wood, Land. & Ten. § 40; Gear, Land. & Ten. § 191; *Williams* v. *Potter*, 2 Barb. 316; *Vegely* v. *Robinson*, 20 Mo. App. 199; *Stedman* v. *McIntosh*, 26 N. C. 291, (42 Am. Dec. 122). A tenancy for years need not be defined. It is sufficient for our purpose that such a tenancy was determinable by the mere expiration of the period for which the lands were demised, and neither demand nor notice was necessary or requisite to enable the landlord to reënter or maintain ejectment for possession: *Smith* v. *Reeder*, 21 Or. 541 (28 Pac. 890, 15 L. R. A. 172). Such a tenancy, however, was susceptible of being converted into a tenancy at will or a periodical tenancy, and when so changed it could only be terminated as other tenancies of the kind.

3. Cursorily, such was the law when the statutes began their innovations, and in most jurisdictions there exist regulations respecting the length of time notice is required to be given to terminate periodical tenancies. Our statute requires three months' notice in writing for the termination of estates at will or sufferance; but, when the rent reserved in the lease is payable at periods of less than three months, the time of such notice is sufficient if it be equal to the interval between the times of payment. In cases of neglect and refusal to pay the rent when due, 14 days' notice only is sufficient for the purpose: B. & C. Comp. § 5390. By another section, when, in the case of a lease of real property and the failure of the tenant to pay rent, the landlord has a subsisting right to reënter for such failure, he may bring an action to recover possession, the action being equivalent to a demand for payment and a reëntry: B. & C. Comp. § 338. These provisions by general statute. The forcible entry and detainer act pro-

vides that the following shall be deemed cases of unlawful holding by force, namely:

"1. When the tenant or person in possession of any premises shall fail or refuse to pay any rent due on the lease or agreement under which he holds, or deliver up the possession of said premises for ten days after demand made in writing for such possession.

2. When, after a notice to quit as provided in this chapter, any person shall continue in the possession of any premises at the expiration of the time limited in the lease or agreement under which such person holds, or contrary to any condition or covenant thereof, or without any written lease or agreement therefor": B. & C. Comp. § 5755.

The notice specified in the latter subdivision must be in writing and served upon the tenant for a period of 10 days before the commencement of the action, unless the leasing or occupation is for the purpose of farming or agriculture, in which case the service must be for 90 days: B. & C. Comp. §§ 5756, 5757. It is manifestly the purpose of these statutes to change the time of notice requisite to entitle the landlord to reënter, as it relates to the several kinds of tenancies known to the common law, and in addition thereto to provide appropriate remedies for reëntry in these and other cases. It is difficult in practice to determine the true intendment and legal effect of section 5755. Indeed, Chief Justice THAYER has said, and not inappropriately, that "the forcible entry and detainer act adopted in 1866 seems to have been thrust into the statute without regard to its harmony or fitness with the other provisions": *Rosenblat* v. *Perkins*, 18 Or. 156, 160 (22 Pac. 598, 6 L. R. A. 257). The act of 1866 (see Laws 1866, p. 33,) is revisory of the forcible entry and detainer act as it existed in territorial days, although it was preceded in 1864 by another act intended for the same purpose: Gen. Laws 1845–64, p. 743. Under the territorial law a person was authorized to recover the possession of the premises when

any rent shall have become due on any lease or agreement, and the tenant or person in possession shall have neglected or refused for 10 days after demand of the possession made in writing to deliver the possession or pay the rent so due: Laws 1854–55, p. 317, § 160, subd. 2. Subdivision 1 of the section under consideration was designed, no doubt, as a revision of this provision; but the latter clause thereof is meaningless unless read in connection with the first, so as to make the 10 days' demand for possession necessary after the failure to pay the rent, and hence that the action could not be maintained until both the failure to pay rent and the demand for possession were made. We are inclined to think that such is the proper rendering of this subdivision, and the landlord could not have a cause of action for forcible entry and detainer under this subdivision until both these prerequisites have been observed. This, however, by way of discussion, that we may be better understood upon the question at issue, not that we intend an authoritative interpretation of such first subdivision now.

The real question involved here is whether the notice referred to in the second subdivision is intended as a notice for terminating the tenancy, or as a necessary step in the procedure for reëntry by forcible entry and detainer action. If the former, it is susceptible of waiver by the tenant, as such a notice was so at common law; but, if the latter, it is a matter with which the parties can have nothing to do, and the landlord must give the notice before he can maintain his action. The relief by forcible entry and detainer is unquestionably designed as a summary proceeding to give speedy and prompt relief, and the action is essentially civil in character although the form of the verdict of the jury would seem to indicate otherwise. A service of summons is required for a period of not less than two nor more than four days before the day appointed

for trial, thus reducing the time of service as compared with other actions of which the justice is given jurisdiction : B. & C. Comp. § 5749. Section 5755 is designed to give the action for a constructive forcible detainer. The action for a forcible entry and detainer, wherein the force must be actual, is provided for by section 5746 : *Taylor* v. *Scott*, 10 Or. 483; *Harrington* v. *Watson*, 11 Or. 143 (3 Pac. 173, 50 Am. Rep. 465); *Smith* v. *Reeder*, 21 Or. 541 (28 Pac. 890, 15 L. R. A. 172); *Twiss* v. *Boehmer*, 39 Or. 359 (65 Pac. 18). In the language of Mr. Chief Justice LORD, "that section [5755] creates a species of constructive force, where none in fact exists. A tenant, notified to quit, who refuses to surrender possession of the premises, and is holding over after the expiration of his lease, within the meaning of the statute, is guilty of holding by force, as much so as though he held it with actual force": *Hislop* v. *Moldenhauer*, 21 Or. 208, 210, (27 Pac. 1052). The cases are numerous where, considering the statutes giving the remedy, the notice is deemed and held to be a part of the procedure, and the action cannot be maintained, nor the court acquire jurisdiction in the premises, until it is given in fact, and it is therefore insusceptible of waiver. Such is the case of *Doss* v. *Craig*, 1 Colo. 177, where a demand for possession was required, and it was held that such a demand was absolutely and essentially necessary to a maintenance of the action. In Nebraska it is made the duty of the person desiring to commence the action to notify the adverse party to leave the premises for the possession of which action is about to be brought, which notice shall be served at least three days before the commencement of the action. This notice is held to be jurisdictional. The statute makes it a part of the procedure : *Hendrickson* v. *Beeson*, 21 Neb. 61 (31 N. W. 266); *Pollock* v. *Whipple*, 33 Neb. 752 (51 N. W. 130). So in Kansas, where it is said : "The statute is mandatory that a party

desiring to commence an action for forcible entry and detainer must notify the adverse party to leave the premises for the possession of which the action is about to be brought, and that this notice shall be served at least three days before the commencement of the action": *Douglass* v. *Whitaker*, 32 Kan. 381 (4 Pac. 874). See also, *Nason* v. *Best*, 17 Kan. 408; *Stuller* v. *Sparks*, 51 Kan. 19 (31 Pac. 301). So in Iowa: *Grosvenor* v. *Henry*, 27 Iowa, 269. See, also, *McDevitt* v. *Lambert*, 80 Ala. 536 (2 South. 438). But, where the notice is not designed as a part of the procedure in the action, it is, on the other hand, susceptible of waiver by the parties: *Espan* v. *Hinchcliffe*, 131 Ill. 468 (23 N. E. 592); *Eichart* v. *Bargas*, 12 B. Mon. 462; *Waggaman* v. *Bartlett*, 2 Mackey, 450.

Turning again to the statute, there is an apparent recognition of the common-law idea that a person might, by holding over a stated term, become a tenant from year to year or month to month, as the case may be, by the implied assent of the landlord, and the most natural deduction is that the legislature intended by the notice provided for to forestall the implied assent and thereby terminate the lease absolutely, and when so terminated there would be a wrongful holding by the tenant, because he could not then presume upon the assent of the landlord to his further holding. If the landlord desires a termination absolutely at the date of the expiration of the lease, he might accomplish it by giving the requisite notice preceding that date, or he might terminate it subsequently thereto by the proper notice, providing his preceding acts could not be construed into a letting for the succeeding period. But, if he desired to terminate the lease because of a breach of a condition or covenant, then the notice must follow the breach, of course; for how could the landlord foretell with certainty that there would be a breach, so as to conform his notice to the fact? Now, in harmony with the law as

it stood prior to the statute, a tenant could, if he saw fit, waive the notice to quit and terminate the contractual relations, so as to entitle the landlord to a reëntry at once upon the expiration of the term. In the case of *Smith* v. *Reeder,* 21 Or. 541 (15 L. R. A. 172, 28 Pac. 890), where a landlord had reëntered peaceably upon the day of the expiration of the lease by its own terms, it was held that there was no such a forcible entry and detainer as would give the tenant a remedy under the act. Such a termination would entitle the landlord to his action in ejectment. But the tenant could not be deemed guilty of a forcible detainer, under the statute we are considering, without a notice to quit given in the manner prescribed, because he may hold over, and, if the landlord should assent thereto tacitly or otherwise, a new relation would arise through a periodical tenancy. It is to cut off this condition that the statute requires the notice, and holding against the notice is constructively forcible and gives the action. But why cannot the tenant waive the notice? In *Rosenblat* v. *Perkins,* 18 Or. 156 (6 L. R. A. 257, 22 Pac. 598), Mr. Chief Justice THAYER strongly intimates that an action will lie under the forcible entry and detainer act, where notice is given under the general statute for the termination of tenancies by will or sufferance, and hence the deduction is that the notice as required by the act in question is not always essential to characterize a forcible detainer, and that there could be a constructive holding by force without it. These authorities by way of analogy, not that they decide the question squarely.

The idea that the notice provided for was intended as a part of the procedure essential to give the court jurisdiction is inconsistent with the cardinal purpose of the act, namely, that of affording the landlord a summary remedy. It is far from summary to say that the landlord shall make a demand of 10 days, or give a notice of 10 or

90 days, as the case may be, and then give another notice by summons of from two to four days, before the court can even acquire jurisdiction to act in the premises. But it does afford a summary remedy when we say that the court shall have jurisdiction to pronounce judgment upon a service of a summons from two to four days after the legal termination of the lease or tenancy. As corroborative of this view is the fact that the statute (section 5747) prescribes what is necessary to state a cause, namely, after describing the premises, that the defendant is in possession thereof, that he entered with force or unlawfully holds the same with force, as the case may be, and that the plaintiff is entitled to possession, omiting all reference to the notice; whereas, if it had been deemed necessary to give the court jurisdiction, it is natural to suppose that the giving of it would have been required to have been stated, as the court held in *Doss* v. *Craig*, 1 Colo. 177, with reference to the demand. Subdivision 1, as we conceive its intendment to be, is also in harmony with this view. When all is considered, the most reasonable construction would seem to be that the notice was intended for the absolute termination of contractual relations, not as an essential part of the procedure for forcible entry and detainer. The procedure must be distinguished or held distinct from the manner of terminating such relations, from which time the tenant will be deemed to be holding wrongfully. The statutory notice for terminating these relations may be waived, the same as the common-law notice could have been, and, when waived by the tenant, he will be deemed as much guilty of a wrong by holding thereafter as if the notice was given. This construction of the statute, while not entirely satisfactory, is promotive of the intendment that the proceeding should be summary, and is in harmony with the practice generally pursued in drawing leases with reference to the statute.

We are constrained, therefore, to affirm the judgment of the circuit court, and such will be the order here.

AFFIRMED.