NORTHWESTERN WISCONSIN ELECTRIC COMPANY, Appellant, vs. PUBLIC SERVICE COMMISSION and another, Respondents. [Two cases.] *

*March 12—April 12, 1946.*

---

* Motion for rehearing denied, without costs, on June 22, 1946.

For the appellant there was a brief by *Aberg, Bell, Blake & Conrad* of Madison, *W. T. Doar* of New Richmond, and *E. Nelton* of Balsam Lake, and oral argument by *Mr. Glen Bell* and *Mr. Doar*.

For the respondent Public Service Commission there was a brief by the *Attorney General* and *H. T. Ferguson,* assistant attorney general, and oral argument by *Mr. Ferguson.*

*Glenn D. Roberts* of Madison, for the respondent village of Centuria.

WICKHEM, J. A brief review of the background of this controversy may be of service in understanding the question involved. The facts are not in dispute to any considerable extent. This was a proceeding by the village of Centuria to acquire the electric utility owned by Northwestern Wisconsin Electric Company serving such community. The course of the proceedings was usual down to the point where the order of the commission fixing just compensation and terms and conditions was affirmed by the circuit court for Dane county. On July 25, 1941, the property subject to acquisition had been specified by an order of the Public Service Commission. On June 18, 1942, the commission entered an order fixing all of the other terms and conditions of the acquisition including the amount of compensation and containing the following provision:

"1. That the village of Centuria may pay to the Northwestern Wisconsin Electric Company, or to any other person or persons lawfully entitled thereto, within four months from the effective date of this order, the full amount of just compensation as above fixed and determined for the property of said Northwestern Electric Company found to be subject to acquisition by said village of Centuria in and by the order or determination heretofore made in this proceeding under date of July 25, 1941. . . .

"8. That in case any action shall be commenced to vacate or modify this order, then the time of payment of the just compensation as finally fixed in this proceeding shall be extended to a date four months subsequent to the date of final judgment in such action, unless such time of payment shall otherwise be fixed by subsequent order in this proceeding."

An action was brought by the company to review the order of June 18, 1942, and on September 28, 1944, judgment was

entered affirming the order. Notice of entry of this judgment was served on September 29th. No action was taken by the village to comply with any of the terms of the order until after four months from September 28, 1944. On February 15, 1945, the village met, drafted a resolution directing the retaining of special counsel and authorizing such counsel to apply to the commission for an extension of time for the acquisition of the utility property. It adopted an ordinance providing for the financing of the cost of acquisition and one relating to the use of the streets by the power commission transmission lines. On February 23, 1945, the village deposited with the clerk of the circuit court for Polk county the sum of $11,500, together with an undertaking to secure payment of additional sums necessary to complete acquisition. Proof of this deposit was filed with the commission on February 24, 1945, and the commission, noting that the four months' period had expired conducted a hearing on March 7, 1945. The commission was of the view that the four months' period had expired, but that its jurisdiction did not end with the order fixing the just compensation and the terms or with the rendition of the final judgment approving that order. Upon a subsequent hearing on April 19, 1945, it entered an order extending the time for the village to comply with the terms as fixed in the order of June 18, 1942, to February 23, 1945, upon which date the commission found the village had complied with such terms and conditions. Upon rehearing, the commission entered an order on July 17, 1945, affirming the order of April 19, 1945.

Plaintiff's first contention is that the village did not comply with the condition of the acquisition order within the four months fixed by the commission. With this view the commission was in accord. This explains why the commission considered it necessary to extend the time within which the village could comply with its order. Upon this appeal the commission states that its views have not changed, although it defers to the trial court's conclusions in this respect and makes no effort to support its original position by argument.

We are of the opinion that the trial court's conclusions are correct. Reference to the pertinent provisions of the commission's order will disclose that there were two separate paragraphs of that portion of the order limiting the time within which the village must comply with its terms and conditions. The first limitation was "within four months from the effective date of this order." It was obviously recognized by the commission that an action to review its order might be commenced and paragraph 8 provided that in such an event the time of payment of the just compensation "shall be extended to a date four months subsequent to the date of final judgment in such action." It is clear to us that the commission sought to make the four months within which the village must act date from an event which gave the village the untrammeled power to act. Any other conclusion would reflect upon the wisdom and providence of the order. The commission had this in mind when it used the words "effective" and "final," the first in respect of the order, and the latter in respect of the final judgment on an action to review the order. It could not have been intended to foreclose the village from completing the acquisition in case the process of appeal exhausted the four months' limitation. The purpose of the limitation, aside from that of expediting the sale, was to give the village a chance to take the steps necessary to finance its purchase and to comply with the order. To hold that the period of appeal to this court, as well as the period of sixty days within which the company could refrain from appealing to this court, is to be taken out of the four months would defeat the fundamental purpose of giving the village time within which to act. The financing of the project could not well proceed so long as there was uncertainty, (1) whether an appeal would be taken to this court from a determination in the circuit court, or (2) whether the proceedings would be set aside upon such an appeal. It is no answer to say that the commission probably relied upon the reservation of a power to fix a different time of payment by a subsequent order. It must be supposed that this reservation

relates to circumstances other than the contingencies thrown up by actions to review. Having purported to deal specifically with delays arising out of this cause, we cannot ascribe to the commission an intent to leave this subject with a wholly inadequate treatment and relegate the village to an application for an extension to meet a very common and usual situation. It appears to us that any other construction of the order would throw into complete uncertainty the amount of time available to the village within which to act. There might be an immediate appeal and quite expeditious handling of the appeal thereafter, in which case six weeks or two months might elapse. On the other hand, the company might defer its appeal for nearly sixty days and the case might take long enough in this court so that the four months might be completely exhausted, or so little left of it as to make it impossible for the village to complete its arrangements within the time limited. So much for what appears to us to be the intent and probable objectives of the portions of the order limiting the villages' time to act.

It is, of course, not for this court to redraft orders of the commission in order to conform them to some unexpressed intent of the commission. We must find language in the order that will accommodate itself to the intention which we ascribe to the order. In this case, the term "final judgment" must be capable of being taken in such a sense. The term will, of course, accommodate itself to the contentions of plaintiff. In many situations the term "final judgment" does refer to that judgment in the lower court which terminates proceedings there, and that this is true is so well known and so long established that we shall not labor the point or attempt any documentation of it. However, this is not the only sense in which the term "final judgment" can be taken. In *Bixler's Appeal,* 59 Cal. 550, it is pointed out that while the term "final" is frequently used in connection with the word "judgment" to distinguish from interlocutory orders or judgments in the same court, the term "final judgment" also describes a deter-

mination effective to conclude further proceedings in the same cause by an appeal or otherwise. See also to this same effect *Roberts v. Central Mut. Ins. Co.* 285 Ill. App. 408, 2 N. E. (2d) 132; *Waples-Platter Grocer Co. v. Texas & P. R. Co.* 95 Tex. 486, 68 S. W. 265; *Peoples Bank v. Merchants Bank,* 116 Ga. 279, 42 S. E. 490. This meaning can be attributed to the term "final judgment" more easily in cases where a period of time within which to act is limited to run from a final judgment. *Dignowity v. Court of Civil Appeals,* 110 Tex. 613, 210 S. W. 505, 223 S. W. 165; *Wolfer v. Hurst,* 47 Or. 156, 80 Pac. 419, 82 Pac. 20. Thus, it is evident that the term "final judgment" can be taken in the sense which conforms with the general purpose of the order and the evident intent of the commission as we have found it. We are not disturbed because the commission construed the language of the order otherwise. In the first place, there was a change in the personnel of the commission; in the second place, the problem of construing the order is one for the court and subjective tests are no more applicable to orders of the commission than to private contracts of individuals.

We conclude that the term "final judgment" as used in the order meant a judgment not open to attack by appeal or as to which an appeal had been pursued and the judgment of the circuit court affirmed. In this case, there having been no appeal from the circuit court's judgment affirming the order of June 18, 1942, the judgment became final within the meaning of the order when the sixty days permitted for appeal had fully expired. Under this construction the four months' period had not expired when the village made its compliance with the terms of the order. These conclusions make it unnecessary to consider any of the other contentions which are here made upon the assumption that the village was late in complying with the order of the commission.

*By the Court.*—Judgment affirmed.

The following opinion was filed June 22, 1946:

WICKHEM, J. (*on motion for rehearing*). Appellant's motion for rehearing is grounded on the fact that the court did not dispose of its contention that, aside from the timeliness of its action, the village did not comply with the terms and conditions of the acquisition. The court is of the view that there is no substance to this contention. There are three alleged defects. The first is that the certificate by the clerk of circuit court reciting the deposit of $11,500 cash on February 23, 1945, and the filing of an undertaking as of that date has attached to it papers which appear to be a part of the village ordinance without indication of its adoption, and an undertaking unsupported by proof of village authority for its execution. We have carefully checked the record in this respect and consider that this objection is unfounded in fact. The second objection is that there is a serious variation between the acquisition order and the right-of-way ordinance adopted by the village; that the order provides that the village shall grant a right of way to appellant to maintain its transmission line through the village until such transmission line *may* be removed by appellant without disrupting service; that the ordinance as adopted provides that the right of way shall exist until the transmission line *can* be removed by appellant without disrupting service. It is contended that the commission contemplated the use of the right of way by appellant until it should find it expedient to remove the line, whereas the ordinance would require appellant to remove the line as soon as it is possible to do so.

We shall not undertake to construe the commission's order. We hold that the ordinance was a purported and intended compliance with the order of the commission; that the use of the word *can* for *may* was obviously inadvertent, and that the ordinance should be construed as a compliance with, and as having the same meaning as, the commission's order.

It is further objected that it does not appear that either the financing or right-of-way ordinances were published. The requirement in question is contained in sec. 61.32, Stats., and, so far as material to this contention, reads:

"The board shall keep a record of all its proceedings, and if there be a newspaper published in any village, the board shall cause the proceedings to be published therein in such manner as the board shall direct."

Publication of the proceedings of the village board are not specifically made a condition to the validity of its enactments, but we shall not consider whether a failure to publish the proceedings of a board meeting invalidates ordinances enacted at such a meeting if the village has a newspaper. Assuming that it does, there is a presumption upon presenting the original or a certified copy of the ordinance into evidence, without more, that there was no newspaper in the village. This follows from the fact that the statute makes no requirement of publication unless there is a newspaper in the village. The situation is quite different where a statute unconditionally requires publication or posting. Even in such cases, when the ordinance has been in force for a considerable time this court has held that there is a presumption of publication. See *Osceola v. Beyl,* 168 Wis. 386, 170 N. W. 252. In view of our conclusions we do not pass upon respondents' contention that this court may take judicial notice of the fact that there is no newspaper in the village of Centuria because the Blue Book contains a list of the newspapers in the state and lists no newspaper for that village.

*By the Court.*—Motion for rehearing denied without costs.

RECTOR, J., took no part.