JOHN LIGHTBODY *vs.* HENRY TRUELSEN and another.

November 2, 1888.

**Landlord and Tenant — Contract between Quarry Company and Keeper of Boarding-House for its Workmen.**—A certain company owned a tract of land, upon which they were operating quarries. Upon these premises they erected certain buildings, designed as boarding-houses for the accommodation of their employes. They made a contract with plaintiff to "run" these boarding-houses, by the terms of which he was to furnish the houses with everything in the way of furniture, bedding, etc., necessary to run them; he to board the company's men for $4.50 per week each, and to pay the company $60 a month rent for the use of the houses. The mode of payment was that the company deducted each man's board bill out of his wages, and paid it over to the plaintiff, less the amount due them for rent of the houses. The number of men employed by the company varied at different times, and they neither agreed to furnish plaintiff any particular number of boarders, nor that all their employes should board with him. Plaintiff was to give his time and personal attention to the supervision of the boarding-houses. *Held*, that this amounted to a lease of the houses, and created the relation of landlord and tenant, and not of master and servant, between the parties; and therefore the possession of the houses was in the plaintiff.

**Same—Subsequent Contract Construed.**—A subsequent agreement construed, and *held* to be merely supplementary to and amendatory of the original one, and not to change the relation between the parties.

Appeal by defendants from a judgment of the district court for St. Louis county, where the action was tried before *Stearns*, J., and a jury, a verdict rendered for plaintiff, and a motion for a new trial denied. Exhibit A, mentioned in the opinion, is as follows:

MARCH 15, 1887.

*To the Minnesota Granite & Stone Co., of Illinois:*

GENTLEMEN: As security to you for paying the claim held against me (and secured by A. C. Ely) by C. H. Oppel & Sons, I hereby sell and quitclaim to you all goods, furniture, and supplies of all kinds held by me in your buildings at Hinsdale, Minn., as per invoice made on the 15th inst. and accompanying this bill of sale.

With this understanding, that I am allowed to run the boarding-house for 60 days and to have all profits accruing therefrom, to be credited to me on these goods after paying for such goods as may be bought from time to time by you and placed in store here. If it is evident that at the end of 60 days that there is a profit sufficient to pay this claim in 12 months from date, then I shall have the privilege of continuing to the expiration of said time. It being agreed that when I pay such claim of C. H. Oppel & Sons, and all accruing bills, either by profit made in boarding-house or otherwise, being within 12 months from date, then all goods shall revert to me. With the understanding that the boarding-house and lodging-houses shall be run to the satisfaction of superintendent in charge. I agree to give this plant my personal and constant supervision, and agree not to be absent without the consent of the company through its superintendent.

It is further agreed that all goods shall be kept in store by the company and delivered to me as may be necessary for use until such time as above bills are paid and all goods revert.

Yours truly, JOHN LIGHTBODY.

Witness:
 W. H. PARKER.
 EDWARD C. ELLIS.

*Walter Ayers*, for appellants.

*Edson, Warner & Hanks*, for respondent.

MITCHELL, J. As tried, under the rulings of the court, this action was purely one in trespass for unlawfully and forcibly entering upon certain premises, alleged to have been in the lawful possession of plaintiff under lease from the Minnesota Granite Company, and ejecting his family, and removing his goods therefrom. The defendants justify as the agents or bailiffs of the Minnesota Granite Company. There are several assignments of error, but counsel for appellants expressly states in his brief that all of them, with the exception of one relating to the amount of damages, turn upon the question whether plaintiff was in such possession of the premises as entitled him to maintain such an action against the Granite Company or its agents; or, in other words, whether he was occupying the premises as the servant or as the tenant of that company.

While there is some quibbling as to terms or names, there is no substantial conflict in the evidence as to any of the material facts

bearing upon that question.    This company owned a tract of land, upon which they were operating quarries, in which they employed a considerable number of men.    Upon this land, and as a part of their "plant," they erected three buildings designed as boarding-houses for the accommodation of their employes.    Soon after the completion of the buildings they made a verbal contract with plaintiff to "run" these boarding-houses, by the terms of which plaintiff was to furnish the houses with everything necessary to the successful running of the boarding-houses, tables, chambers, sleeping-rooms, laundry, etc.; in short, to furnish the houses and all supplies.    He was to board the company's men for $4.50 per week for each man boarded.    He was also to pay the company $60 per month rent for the use of the houses.    The mode of payment was that the company retained the amount of the board bills out of the wages of the men, and paid it over to plaintiff, less the amount due the company from plaintiff for rent of the buildings.    Plaintiff was to give his entire time and personal attention to the supervision of the boarding-houses.    The company did not agree to furnish him any particular number of boarders, nor that all their employes should board with him.    The number of men employed by the company varied at different times from 30 or 40 up to 100 or over.    Plaintiff took possession of the houses in December, 1886, furnished them, and ran them under this agreement, when, in March following, the company, ascertaining that he owed to Oppel & Son an overdue account of some $1,900 for supplies, upon which legal proceedings were likely to be commenced against him, made an arrangement with him by which they paid this claim for him, he executing to them the writing, Exhibit A.    Some time in June the superintendent of the company, becoming dissatisfied with plaintiff's management of the boarding-houses, claiming that they were not being run properly or according to the agreement, notified him to leave and quit the premises, which he refused to do. Thereupon, on July 2d, the superintendent called in the assistance of the defendants (sheriff and deputy-sheriff) to remove him and his property, which they did, ordering his wife to leave, (plaintiff being temporarily absent,) and removing his goods out of the houses, and storing them elsewhere.

If plaintiff was merely the servant of the company, employed to manage the boarding-houses for them, there could be very little doubt but that his use or occupancy of the buildings was also as servant, and not as tenant, being merely accessory to the more convenient performance of his duties as servant. If the use or occupancy be as servant, the law is well settled that the master does not part with the possession, the servant's possession being the master's. If the servant is discharged, he must, on request, quit the premises; and, if he refuses to go, the master may eject him, and for that purpose use such force as is reasonably necessary. The master's right in this respect does not depend upon the question whether the servant is rightfully or wrongfully discharged, but exists in the one case as well as the other; the master incurring the risk of paying damages for breach of the contract of employment, which would be the servant's only remedy. But the question here is, was plaintiff the servant of the company at all, or was he their tenant? A tenant may be defined to be one who has possession of the premises of another in subordination to that other's title, and with his consent. No particular form of words is necessary to create a tenancy. Any words that show an intention of the lessor to divest himself of the possession, and confer it upon another, but of course in subordination to his own title, is sufficient. While, of course, the existence of certain things is necessary to constitute a lease, there is no artificial rule by which the contract is to be construed. It is largely a question of the intention of the parties, to be collected from the whole agreement. It seems to us that the agreement in the present case all looks to a leasing of these boarding-houses to plaintiff, and not to an employment of him as agent to manage them for the company. Every provision of the contract contemplates his occupancy as landlord or proprietor. There is nothing to indicate that his possession of the buildings was not to be exclusive; on the contrary, the nature of the business, and the manner in which it was to be run, necessarily imply that it was to be exclusive. He was to run the business, not for the benefit of the company, but for himself; the profits, if any, being his, and the losses, if any, he would have to stand. He took his chances on the number of board-ers he would get; the company did not obligate themselves to furnish

any particular number.   He furnished the houses and provided the
supplies at his own expense, just as any boarding-house keeper would
do, if running the business as principal, and not as agent for another.
What was paid him was for boarding the men, and not as compensa-
tion for services as agent.   Moreover, he had to pay a fixed rent for
the use of the buildings, the amount of which was not at all depend-
ent upon the number of boarders the company furnished.   It was to
be the same whether they furnished one or one hundred.   The man-
ner in which the board-bills of the men or the rent for the buildings
were paid is unimportant.   That was a mere question of convenience.
The fact that plaintiff was obligated to board the company's men,
and that he was to give his time to the supervision of the boarding-
houses, is not at all inconsistent with the idea of a lease.   In short,
the whole contract, in our judgment, shows an intention, not to em-
ploy plaintiff's services as agent, but to lease the buildings to him,
with just such covenants and conditions as to the manner of their
use and the mode of conducting the business as would naturally be
incorporated into a lease, in view of the relation the buildings bore
to the company's business.

If the relation of landlord and tenant was created by this contract,
there was nothing in the arrangement of March 15th (Exhibit A)
which changed it.   And right here we think appellants' counsel have
fallen into error in assuming that after that date Exhibit A was the
whole and only agreement between the parties.   At most it was a
mere supplement to or modification of the preceding oral one.   Its
main object was to secure the company for what they had advanced
for plaintiff, but in such a way as not in the mean time to interfere
with the efficient management of the boarding-houses by him.   It is
true that there are also some things incorporated into this memo-
randum as to the terms and conditions upon which the plaintiff would
have a right to continue the business, but nothing amounting to a
change in the relation of the parties from that of landlord and tenant
to that of master and servant, or employer and employe.   The court
below did not define the relation of the parties, or in terms instruct
the jury that it was that of lessor and lessee, yet he in effect did so
by saying that under the contract plaintiff was to have the *possession*

of the premises; for, if he had that right, there was nothing else to which it could be referred except that of a tenancy. But, whatever lack of precision there may have been in the language of the charge, it was, in its legal import, correct.

In submitting the case to the jury the court made the right of defendants, as agents of the Granite Company, to remove plaintiff and his property from the premises, as they did, to depend upon the question whether or not he had forfeited his right to the possession by a violation of or a failure to fulfil the terms of his contract. Of this the defendants had not, under the evidence, any reason to complain, and, as we understand them, do not here complain, if the court was right in holding, as he did, in effect, that the contract of the parties created a tenancy which gave the *possession* of the premises to plaintiff.

This disposes of all the assignments of error except the fifth, which, in substance, is that the damages awarded are excessive. The jury awarded $1,800.33. This was cut down by the court to $1,000. Even this amount seems large, but we do not think that we would be warranted, under the evidence, in holding it excessive.

Judgment affirmed.