[File No. 6534.]

HOWARD A. WOOD, Respondent, v. JOHN HOMELVIG,
Appellant.

(283 N. W. 278.)

Opinion filed December 31, 1938.

*Theodore Swendseid,* for appellant.

*Theo. B. Torkelson,* for respondent.

Sathre, J. The complaint in this action alleges in substance that on the 9th of May, 1930 and prior thereto and during the year 1925, the plaintiff was the owner of the following described land, situated in the county of Slope, in the state of North Dakota: The north half

of the southeast quarter and the north half of the southwest quarter of section 4, township 134, range 101; that in the year 1925 the plaintiff leased the land to the defendant and that as a consideration the defendant agreed to pay the taxes on the described premises for the year 1925 and subsequent years as rent for the use of said land, that the defendant failed and neglected to pay such taxes for the year 1925 or for any subsequent years until the year 1930; that by reason of the failure of the defendant to pay such taxes it was sold for taxes to Slope county at the annual tax sale held on the 14th day of December, 1926; that thereafter and on the 9th day of May, 1930, a tax deed was issued by the county auditor to the said Slope county, and that in June, 1930, the defendant purchased said land from Slope county, that he concealed all of these facts from the plaintiff and that the plaintiff did not become aware thereof until the month of March, 1933, and that the plaintiff until that time had relied upon defendant's agreement to pay the said taxes upon the said land for the use thereof, including the taxes for the year 1925.

That on the 19th of October, 1934, the defendant sold to the North Dakota Department of State Highways 6.24 acres of said land for highway purposes, and that the tracts that were sold contained valuable gravel deposits and that the defendant received therefor the sum of $800.00, and that in May, 1935, the defendant sold and conveyed to the county of Slope for a consideration of $58.20, 2.91 acres of said land for right-of-way purposes.

The complaint then demands that a judgment be entered in plaintiff's favor declaring him to be the true owner of said premises and that the defendant acquired and held the title thereto unlawfully and in violation of the rights of the plaintiff and requiring the plaintiff to account for all sums received by him under and by virtue of the sale of portions of said land for gravel and right-of-way purposes and for all taxes assessed and levied against the said premises which are unpaid and that the plaintiff recover from the defendant the amount thereof, together with interest and costs.

The answer denies that the defendant had any knowledge that the plaintiff owned the land prior to May, 1930; admits that he did not pay the 1925 taxes and that said land was sold for the taxes for the year 1925, that a tax deed was issued to Slope county and that the

defendant acquired the land by purchase from Slope county in June, 1930; admits that defendant never paid any taxes levied on said land up to the time he purchased same on the 16th day of June, 1930, admits the sale of gravel and right-of-way rights, but alleges that he was the rightful owner and had the right to make such sales.

The answer further alleges that the plaintiff has been guilty of extreme laches in the commencement of this action; that there was no lease in writing, and therefore the alleged lease is invalid under the statute of frauds.

The answer further alleges that plaintiff's cause of action did not accrue within six years and was barred by the statute of limitations.

The district court made findings in favor of the plaintiff adjudging him to be the true owner of the land and that he was entitled to recover from the defendant the sums of $858.20 and the costs of the action as demanded in the complaint.

The defendant appealed on the grounds of insufficiency of the evidence and that the trial court erred in its findings of fact and conclusions of law in favor of the plaintiff in entering judgment thereon and the matter is here for trial de novo on all the issues.

The facts necessary to a determination of the issues are substantially as follows: The plaintiff is a resident of Burlington, Wisconsin. Sometime prior to 1925, he purchased an assignment of a mortgage on the land involved in this action. At the tax sale held in Slope county on December 12, 1922, said land was sold for the taxes for the year 1921 to one E. R. Moore, and on the 24th of December, 1925, the said Moore assigned the tax certificate to the plaintiff, Howard A. Wood, and on the 21st day of January, 1926, after proceedings duly had, a tax deed was issued to the plaintiff, Howard A. Wood, by the county auditor of Slope county.

The land was again sold for the taxes for the year 1925 at the tax sale held in Slope county in December, 1926, and Slope county became the purchaser and thereafter, after proceedings duly had and on the 9th day of May, 1930, a tax deed was issued by the county auditor to said Slope county.

Subsequent thereto and on the 16th day of June, 1930, said land was sold by Slope county to the defendant, John Homelvig, for the sum of $160.00.

In the years 1934 and 1935, the defendant sold certain tracts of said land to the North Dakota Department of State Highways and to the county of Slope for gravel to be used on the highways and for right-of-way purposes for which the defendant received $858.20.

The defendant is a resident of the county of Slope, state of North Dakota, and is the owner of lands adjoining the lands described herein. Sometime in the early part of the year 1925, the plaintiff went to Slope county for the purpose of making some investigation with reference to the land upon which he held the mortgage referred to. He called on the defendant at his farm home in Slope county and some conversation was had between plaintiff and defendant with reference to leasing said land to the defendant. As to this conversation, the defendant testified on cross-examination as follows:

"Q. When did you first commence to use the land?

"A. Either in the year of 1924 or 1925, I think.

"Q. You mean 1924 and 1925?

"A. Yes, but I did not use it much.

"Q. Who did you make arrangements with to use it or lease it the first year?

"A. Mr. Howard Wood.

"Q. When you first commenced using it, you make your arrangements with Mr. Howard A. Wood?

"A. Yes, he came up either in the Spring of 1924 or 1925, and then I said that I would pay the taxes as long as I used it, used the land.

"Q. Just a minute—when Mr. Wood was there either in 1924 or 1925, he was out there and saw you on the place?

"A. Yes, sir.

"Q. Out at your place?

"A. Yes.

"Q. You talked about this land at that time?

"A. Yes, sir.

"Q. And you agreed with him, that is, it was agreed between you and him that you would just continue to lease the land and you would pay the taxes for the use of it?

(Objections by defendant's counsel and objections overruled).

"A. It was not agreed for any certain length of time.

"Q. But at that time, Mr. Homelvig, you did agree with Mr. Wood that you should pay the taxes and use the land?

"A. As long as I used the land.

"Q. And you did use it in the year 1925, did you not?

"A. No, I did not. I did not use it. I used it about a month and a half.

"Q. But you did use it in 1925?

"A. Either in 1924 or 1925, I don't remember whether it was 1924 or 1925.

"Q. It was during the year that Mr. Wood was out there?

"A. About a month and a half.

.    .    .    .    .    .    .    .    .    .    .

"Q. Did you ever seed anything on it?

"A. I might probably have put in a few acres there.

"Q. When?

"A. That year.

"Q. What year?

"A. One of them years, I think.

"Q. That is the year that Mr. Wood was out there?

"A. I think it was. I would not say for certain though.

.    .    .    .    .    .    .    .    .    .    .

"Q. In about 1927, did you use it that year?

"A. Well, that is the year we put in a few acres. From the start there was about twenty acres broken on it in four different places. I put in one piece.

"Q. In 1927?

"A. Yes.

"Q. Now did you not even pasture the land in 1926?

"A. No.

"Q. Did you have any stock on it?

"A. No, I never had any stock on it.

"Q. And no crop either?

"A. No.

"Q. But you did say you put in a crop on it in 1927?

"A. Yes, a few acres."

Thereafter the defendant wrote several letters to the plaintiff, which letters were introduced in evidence as plaintiff's exhibits, and these

letters are as follows, in the order in which they were written:
"Plaintiff's Exhibit No. 1. (LCB)

"John Homelvig, Loan (Lone) Tree Farm.
"Amindon, N. D. June 22, 1927.

"Howard A. Wood Burlington, Wisc.

"Dear Sir:

"Your letter at hand. I am not using the land very much. I have sometimes 4 and 6 horses in the pasture. 2 years ago I seeded a few acres, but we did not cut eny (any) of it and since I have not seeded any. I will look after it the best I can. Will you take that I offered you when you were here.

"Your very truly
"John Homelvig."

"Plaintiff's Exhibit No. 2 (LCB).

"John Homelvig Lone Tree Farm
"Amidon, N. D. Oct. 17, 1927.

"H. A. Wood, Burlington, Wisc.

"Dear Sir:

"Why would you rent your quarter land here for at least 3 years, as the fense (fence) is all down and have to be rebuilt, and if I got to the expense of fencing, I would like to rent for a certain time. Or if you will take what I offered you when you were up here, I will buy the land.

"Yours truly,
"John Homelvig."

"Plaintiff's Exhibit No. 3. (LCB)

"John Homelvig Loan (Lone) Tree Farm.
"Amidon, N. D. MCH 15, 1928.

"Howard A. Wood, Burlington, Wisc.

"Dear Sir:

"I have written you a couple of letters regarding your land, but never got an answer. Pleas (e) let me know what you intend to with it. Before it can be pastured the fences have to be rebuilt all around. If I can get a reasonable contract for a few years, I will fix the fence.

"Yours truly,
"John Homelvig."

"Plaintiff's Exhibit No. 4. (LCB)

"John Homelvig Lone Tree Farm.

"Amidon, N. D. May 29, 1928.

"Howard Wood, Burlington, Wisc.

"Dear Sir:

"Your letter of May 5th at hand but been so busy have not had time to answer before. Yes I will pay the taxes. I will pay the 1927 taxes now. I will have to do a lot of fencing so I would like to have it for more than one year. And I will have to use mostly steel posts on the ridges so I would like to have understanding that I can take them back in case you sell the land.

"Yours truly,

"John Homelvig.

"What is the least cash you will take for the land?

"J. H."

With reference to the letter, plaintiff's exhibit 4, the defendant testified as follows on cross-examination:

"Q. In this letter, Plaintiff's Exhibit No. 4, which you wrote to Mr. Wood, you referred to the land in controversy in this case, did you not?

"A. Yes, I did.

"Q. In this letter you say 'Yes, I will pay the taxes. I will pay the 1927 taxes now.' Did you pay the 1927 taxes?

"A. I cannot remember whether I did or not.

"Mr. Swendseid: We will stipulate that he did not pay any taxes until he got the deed."

From the testimony of the defendant and the letters written by him to the plaintiff, quoted herein, it clearly appears that he recognized the plaintiff as the owner of the land in question. It further appears that he used the land and he stated specifically that he would pay the taxes for the use of it, and the plaintiff relied on this statement. These negotiations and the correspondence, together with the fact that the plaintiff took possession of the land, is sufficient to establish the relation of landlord and tenant. The rule is well established that the relation of landlord and tenant exists where one person occupies the premises of another in subordination to that other's title and with his consent. No particular form of words is necessary to create a tenancy. Any words that show an intention of the lessor to divest himself of the

possession and confer it upon another but in subordination of his own title, is sufficient. 4 Dunnell, Minn. Dig. 2d ed. § 5361; Lightbody v. Truelsen, 39 Minn. 310, 40 N. W. 67, 68; Beecher v. Spain, 140 Minn. 255, 167 N. W. 793; Gates v. Herberger, 202 Minn. 610, 279 N. W. 711. The defendant never notified the plaintiff that he discontinued the use of the land nor did he communicate with the plaintiff until March 30, 1933, when he wrote him as follows:

"Dear Sir:

"There was so much back taxes on your land the year I had it for pasture, that I quit using it, and I wrote you about it, and after awhile the county sold it for taxes.

"Yours truly,

"John Homelvig."

(Plaintiff's Exhibit 5.)

On cross-examination he admits he did not inform the plaintiff that the taxes had not been paid until he wrote the letter, plaintiff's exhibit 5. His testimony with refernce thereto is as follows:

"Q. Mr. Homelvig, did you ever inform Mr. Wood that you had not paid the taxes on this land?

"A. I think I did.

"Q. When did you do that?

"A. I cannot remember the year.

"Q. You cannot remember whether you did or not?

"A. No.

"Q. You mean when you say that you informed him, was that by this letter, Plaintiff's Exhibit No. 5 that has just been introduced in evidence. Was that time you informed him you had not paid the taxes?

"A. It must have been. I cannot remember that."

When the plaintiff received defendant's letter, plaintiff's exhibit 5, dated March 30, 1933, he immediately wrote the county treasurer of Slope county and inquired whether the taxes on the land in question had been paid and he was advised by the county auditor that the land in question was sold to Slope county on May 9, 1930 for taxes and that Slope county sold it to the defendant, John Homelvig, on June 16, 1930, and thereafter he brought this action.

Counsel for the defendant contends that there was no written lease between the parties and if there was any lease at all, it was merely a

verbal one and was therefore void under the statute of frauds. Such contention is without merit. In his letters written to the plaintiff and which are set out in this opinion, the defendant recognizes the plaintiff's ownership and his title to the land. He also specifically agrees to pay the taxes and he takes possession of and occupies the land. The plaintiff relied on the statements made by the defendant, and since both parties acquiesced in the agreement and proceeded to carry out its terms, obligations were thereby created which became binding on both. But even if the lease were verbal and within the statute of frauds so that neither party could enforce its terms against the other, yet, if the lessee enters into possession under the lease and the lessor consents thereto, the obligations thus created are binding and the statute of frauds does not apply. Rosenblat v. Perkins, 18 Or. 156, 22 P. 598, 6 L.R.A. 257.

"The authorities agree that from the entry and occupation and payment of rent under a void lease, as in case of a lease invalid by reason of a noncompliance with the statute of frauds, there results a legal relation of landlord and tenant between the owner and the occupant of the land. The tenancy is not created by the defective written lease, but it is implied by the law from the occupancy of the premises and the payment and receipt of the rent therefor. In such a case it would be unjust and fraudulent to permit the landlord, after agreeing that the tenant might enter and occupy his premises on condition of paying him rent, and the latter enters and complies therewith, then to treat the tenant as a trespasser. The statute of frauds was not passed to enable landowners to perpetrate frauds or exercise bad faith. The agreement in such a case is void at the option of the parties, or either of them; but if they both see fit to engage in the execution of its terms, and do acts under it, they may thereby establish such a relation between themselves as the law will recognize and enforce." 16 R. C. L. p. 574, § 49.

The defendant further contends that the plaintiff is guilty of laches and unreasonable delay in bringing this action. Under the circumstances and the facts, this contention cannot be sustained. The defendant having failed to advise the plaintiff that he had not paid taxes and thus permitted the land to be sold to the county and a tax deed to issue thereon, and immediately thereafter purchased said land from the county

taking title in himself, does not show good faith on his part. In any event, since he failed to notify the plaintiff of these circumstances which were peculiarly within his knowledge and which plaintiff was entitled to know, he, the defendant, cannot take advantage of the situation and charge the plaintiff with laches in bringing the action.

Since it is clearly established by the evidence that under the agreement between the plaintiff and defendant the relation of landlord and tenant existed, the plaintiff can invoke the doctrine that a tenant is estopped to deny his landlord's title. The spirit of the general rule that the tenant may not acquire title hostile to his landlord, is that the tenant shall not avail himself of any acts of his own or any act hostile to the landlord's title, as a ground for refusal to surrender his possession under the lease. Mower v. Rasmusson, 34 N. D. 233, 158 N. W. 261; Breden v. Johnson, 56 N. D. 921, 219 N. W. 946; Lincoln Nat. L. Ins. Co. v. Sampson, 61 N. D. 611, 239 N. W. 245. See also 35 C. J. p. 1224, § 565.

It is also well settled that a tenant who is required by the terms of his lease to pay taxes on the property leased, cannot acquire tax title as against his landlord. Hurt v. Schneider, 61 Colo. 104, 156 P. 600, L.R.A.1916F, 204; 35 C. J. p. 1246, § 602.

The defendant also contends that this action is barred by the statute of limitations. We see no merit in this contention. The defendant obtained his deed from Slope county on June 16, 1930. The plaintiff did not discover the facts in connection therewith until in 1933. However, the action was commenced in April, 1936, and even if the statute begin to run on June 16, 1930, the action was still commenced within the statutory period.

The judgment of the District Court is in all things affirmed.

CHRISTIANSON, Ch. J., and NUESSLE, BURR and MORRIS, JJ., concur.