Alta E. LOVIG, Plaintiff and Respondent,

v.

Olene GROVOM, as Executrix of the Last Will and Testament of Nels G. Grovom, Deceased, on behalf of Olena Grovom, individually, Dorothy C. Grovom, and Evelyn L. Grovom, and all other persons unknown claiming any estate or interest, or lien or encumbrance upon, the property described in the Complaint, Defendants and Appellants.

No. 7427.

Supreme Court of North Dakota.

April 18, 1955.

Rehearing Denied May 6, 1955.

Dahl & Dahl, Grafton, for defendant-appellant.

W. R. Spaulding, Towner, for plaintiff-respondent.

SATHRE, Judge.

The plaintiff brought this action to determine adverse claim to the following described real property situated in the county of McHenry and State of North Dakota:

"Southeast quarter of the Northwest quarter (SE¼NW¼) West half of the Northwest quarter (W½NW¼) of Section Twenty-two (22) Township One Hundred Fifty-eight (158) Range Fifty-seven (57)"

The complaint is in the statutory form. It has an additional paragraph alleging that the plaintiff and those under whom she claims title have continuously been in the actual, open, adverse and undisputed possession of said premises and had, for more than ten years prior to the commencement of the action, paid the taxes thereon.

Nels G. Grovom is the only defendant named in the summons. He died after the case was tried but before a decision was handed down by the trial court. It was stipulated therefore that the defendant as executrix of the last will and testament of Nels G. Grovom, deceased, and all other persons unknown claiming any interest or estate or incumbrance upon the property described in the complaint be substituted as the defendants. The answer is in the form of a general denial and it further alleges that one Lars Lovig was the husband of the plaintiff; that the defendant rented the land to Lovig for many years prior to the time it was sold for taxes to McHenry County; that Lovig retained all the crops and income from the land; failed to account to the defendant therefor, and failed to pay the taxes on the land; permitted it to be sold to the county for taxes; later purchased the land from the county and retained all of the income therefrom; that the defendant was ready and willing to pay all amounts plaintiff and her predecessor in interest paid in taxes, less any amount that might be due the defendant from the crops. The answer further alleges that plaintiff agreed in writing to convey the premises to defendant if he would repay the plaintiff the taxes she and her husband had paid on the land and that he accepted said offer in writing, but that plaintiff refused to convey under said agreement. By reply plaintiff denied all of the affirmative allegations of the answer.

The case was tried before Hon. Harold B. Nelson, Judge of the district court without a jury. Judgment was rendered in favor of the plaintiff and the defendant appealed and demanded a trial de novo.

The main contention of the defendant on this appeal is that the trial court erred in finding that there was no valid rental contract between the defendant and Lars Lovig, and that there was no valid offer of sale of the land involved, by the plaintiff and acceptance thereof by the defendant.

A written stipulation of facts was agreed upon by the parties and briefly stated they are as follows:

That the defendant Nels G. Grovom, received a United States Patent to the real estate involved in this action in May 1906; that the said land was sold for the taxes for the year 1928 to McHenry County at the annual tax sale in the year 1938; that Lars Lovig rented the land from McHenry County for the farming season of 1941 and that on June 25, 1941 McHenry County entered into a contract with him for the sale of said real estate, and that said Lars Lovig being then in possession of said real

estate as tenant of the county remained in possession thereof under said contract for deed until the 25th day of October 1950; that he made all payments due under said contract and paid all taxes and assessments legally levied on said land subsequent to the 25th day of June 1941 and that on the 21st day of June 1944 a county deed was issued to him, in fulfillment of said contract for deed.

That on the 25th day of October 1950, the said Lars Lovig sold and conveyed the said land for good and valuable consideration to the plaintiff Alta E. Lovig, by quitclaim deed dated on said date; that the said plaintiff Alta E. Lovig went into possession of said real estate upon issuance to her of said quitclaim deed and that she has remained and now is in possession thereof under and by virtue of said quitclaim deed and has paid all taxes and assessments legally levied thereon since said date.

The stipulation further recites that on the 24th day of September 1951 the plaintiff Alta E. Lovig wrote a letter to the defendant Nels G. Grovom; that on the 1st day of October 1951 the defendant Nels G. Grovom wrote to the plaintiff in reply to said letter and that on October 2, 1951 the plaintiff wrote a letter to the defendant Nels G. Grovom in reply to his letter dated October 1, 1951. The said letters are in evidence respectively as exhibits 1, 2, and 3. From the stipulated facts and the testimony taken at the trial it appears that the defendant Nels G. Grovom paid the taxes upon the land in question to and including the year 1927; that the land was sold to McHenry County in 1938 for the taxes for the year 1928.

The defendant Nels G. Grovom contends that these letters constitute an offer by the plaintiff to sell and an acceptance by him to buy the land in question. It is not necessary to set out the contents of this correspondence between the parties in detail. In the letter dated September 24, 1941 plaintiff advised defendant that her husband had died and that she had found that he had paid the taxes on the land in question and that it could not be cleared up without the signature of the defendant Grovom. She said "could you please do that". She stated further, "I am asking you to do this for me or if you want to pay me all Lars has paid out in taxes since 1928, the abstract cost me $25. Lars has a county deed so I would thank you most sincerely if you will write me a line at once." The defendant replied to this letter October 1st in which he said: "I will take a trip out there as soon as I have finished some 50 acres of combining, and I hope that the weather will hold so that I will be through this week. I will 'except' to pay taxes if I find everything else proper and satisfactory. I will be out there to see you and we will talk things over." In her second letter to the defendant written October 2, the plaintiff stated,

"so all I have to depend on is my land. On second thought I wrote you I remembered Lars had offered you the land back for the taxes and you had wrote it wasn't worth it or something to that effect. Anyway since I had to buy that abstract and lawyers fees and so on and that 120 joins our land, don't you think it would be all fair and justice to sign that abstract and let me keep it. In line it is? I would be very greatful to you if you would."

The defendant contends that these letters constitute an offer by the plaintiff to sell to him the land in question in consideration of payment to her of the taxes that had been paid thereon by her husband Lovig, and that his letter constitutes an acceptance by him of the offer, and that the correspondence resulted in a valid contract of sale of the land.

At the trial, on cross-examination, the defendant testified that in October sometime after the correspondence referred to between him and the plaintiff he made a trip to Minot and contacted the plaintiff and with reference to the conversation with her we quote from his testimony:

"Q. And did you talk with Mrs. Lovig at Minot? A. I did.

"Q. Did you at that time offer to repurchase the land by paying all the taxes, which had been paid at that

time? A. I asked her if she received my letter. She said yes and it stated in my letter that I would accept the proposition.

"Q. And did you make any deal with her at that time when you were in Minot? A. I did. We was supposed to come down to Towner here. She could get a ride with me down and we would settle it and come down to Towner the next day but she wouldn't come.

"Q. And you called at my office at that time. A. I did.

"Q. And at that time did you tell me that Mrs. Lovig had refused to accept the amount of taxes in exchange for a deed? A. She said she had changed her mind so I couldn't say. That is to come along down."

He stated further that he then went to Towner where he called on the attorney for the plaintiff and stated to him that he would accept a deed to one half of the mineral rights in the land in question in settlement of his claim against plaintiff but that she refused to give such deed.

■■■■ While the letters written by Mrs. Lovig to Grovom could probably be considered as an offer to sell the land to him, there is no evidence that he accepted the offer. He wrote plaintiff that:

"I will take a trip out there as soon as I have finished some 50 acres of combining * * * I will except (expect) to pay taxes if I find everything proper and satisfactory. I will be out there to see you and we will talk things over."

It is clear that his letter does not constitute an acceptance because, before accepting the offer he first wanted to "find out if everything was proper and satisfactory"; and as he said when he went out to talk the matter over with her, "she had changed her mind."

The defendant testified that he resided in Walsh County since he proved up the land in controversy in May 1906 and that in 1932 he visited the land and that he made arrangements with Lovig that he could use the land "but to be sure and pay the taxes". He testified that nothing was said as to how long the arrangements would continue, but he thought it would continue "as long as these times was".

The defendant contends that under said arrangements the relationship of landlord and tenant was established and that Lovig was his tenant and therefore was estopped from denying the title of his landlord and from availing himself of any acts of his own hostile to his landlord's title as grounds for setting up title in himself. The defendant further contends that the acquisition by Lovig of the title resulted in an implied trust in favor of the defendant. In support of his contention defendant cites the case of Wood v. Homelvig, 68 N.D. 735, 283 N.W. 278. However the facts in the Wood case are materially different from the facts in the case at bar. In the Wood case the defendant Homelvig wrote letters to the owner Wood recognizing him as owner of the land, offered to pay the taxes for the use thereof. The plaintiff owner accepted the offer and the defendant went into possession under the agreement, but failed to pay the taxes, permitted the land to be sold for taxes and then bought the land from the county. There is no evidence in the instant case that Lars Lovig agreed to pay the taxes for the years 1928, 1929, 1930 and 1931 or for any specified year. Two witnesses testifying for the defendant stated that Lars Lovig farmed and "hayed" the land from 1934, but they did not purport to know on what terms Lovig farmed and "hayed" the land.

The record shows that in the spring of 1941 Lars Lovig leased the land from McHenry County and that in June of the same year he entered into a contract with the county for the purchase of said land; that thereafter he paid the taxes thereon and paid the installments on the contract and that in June 1944 he obtained from the county a county deed to the premises.

He continued in possession of the land and paid the taxes thereon until October

1950 when he conveyed the land to his wife the plaintiff. She went into possession upon receipt of the deed from her husband and paid the taxes thereon.

The burden was on the defendant to establish a valid rental contract between her husband Grovom and Lars Lovig. In this she has failed. She is therefore not in position to contend that Lovig could not acquire a title adverse to that of Grovom as his landlord. Grovom admitted that he had received notice of the tax deed proceedings instituted by McHenry County, but he took no action either by contacting Mr. Lovig or the county officers. The first time that he showed any interest in the land appeared to be when he received the letter written by the plaintiff in September 1951. More than twenty years had elapsed since he paid taxes on the land and to all intents and purposes he had abandoned it.

The judgment of the district court is affirmed.

BURKE, C. J., and MORRIS, GRIMSON and JOHNSON, JJ., concur.