John WILSON, Plaintiff and Respondent,

v.

DIVIDE COUNTY, North Dakota, a public corporation, Richard Rand, as Executor of the Estate of Bernard P. Rand, deceased; Nadine L. Rand, Richard Rand, and Bernadine Ullman; Capital Trust and Savings Bank of St. Paul, a corporation; the unknown heirs of Carl Ringdahl, deceased; and all persons unknown, claiming any estate or interest in, or lien or encumbrance upon the property described in the complaint, Defendants,

and

Nadine Lesem Rand, Defendant and Appellant.

No. 7527.

Supreme Court of North Dakota.

May 9, 1956.

Thos. F. Clifford, and Joseph P. Stevens, Minot, for appellant.

R. H. Points, Crosby, and Higgins & Donahue, Bismarck, for respondent.

GRIMSON, Judge.

This is an action to quiet title to the Southwest Quarter (SW¼) of Section Eleven (11), Township One Hundred Sixty-three (163), North of Range Ninety-seven (97) West. Plaintiff claims to be the owner in fee simple. He asked that the defendants set forth their claims and that the same be declared null and void.

The only defendant who answers is Nadine L. Rand. She makes a general denial and counterclaims that she is the owner of the premises as the heir and legatee of Bernard P. Rand who had been the owner of the premises at one time. She further alleges that the plaintiff's claim of ownership was by virtue of a tax deed to Divide County which she says is null and void. The plaintiff replied to this counterclaim making a general denial and setting up as additional source of ownership in himself, his open, adverse and undisputed possession under a county deed and the payment of taxes for more than ten years.

Briefly the evidence shows that Bernard P. Rand became the record owner of the land in question by virtue of a warranty deed made on November 19, 1926, at which time he lived in Minneapolis. He later moved to Los Angeles where he died March 7, 1950, bequeathing all of his property to his widow, Nadine Lesem Rand. His will was admitted to probate and defendant, Richard P. Rand, was appointed Executor. On April 12, 1937, the plaintiff rented those premises by written lease from one, A. U. Anderson, "Agent for the owner." That lease provided for the termination thereof on Oct. 1, 1937. Plaintiff claims to have rented the premises again for the same time in 1938 and 1939 and under the same terms. In 1939 Divide County brought tax proceedings for delinquent taxes on this land and obtained a tax deed to the land on March 2, 1940. The plaintiff then on March 5, 1940, rented the premises from Divide County and in November 1941, he testified that he bid in the land at the regular tax sale and received a contract for deed on March 23, 1942, and has since then been in possession of the premises and paid the taxes up to the 18th day of April 1952 when this action was commenced. He paid up his contract on November 6, 1945, and obtained a county deed.

It is admitted by both parties at the trial and on appeal that the tax deed to Divide County was void because of defects in the proceedings. The notice of the expiration of the period of redemption stated the total amount required to redeem but included therein two years that had been delinquent for less than three years prior to the date of the notice. This made the notice invalid and the tax deed issued thereon was void. Knowlton v. Coye, 76 N.D. 478, 37 N.W.2d 343; Loy for Use and Benefit of Union Securities Co. v. Kessler, 76 N.D. 738, 39 N.W.2d 260; Kelsch v. Miller, 73 N.D. 405, 15 N.W.2d 433, 155 A.L.R. 1186; Baeverstad v. Reynolds, 73 N.D. 603, 18 N.W.2d 20.

The undisputed evidence also shows that the plaintiff had possession of these premises under that contract and deed from March 3, 1942 until the bringing of this action on April 18, 1952, and paid all taxes during said time. That contract and deed, constituted color of title. Robertson v. Brown, 75 N.D. 109, 25 N.W.2d 781; Grandin v. Gardiner, N.D., 63 N.W.2d 128.

The defendants, however, raised the question of whether such possession was adverse to the defendant, Rand. They claim that the leasing of the land by the plaintiff from Rand created the relationship of landlord and tenant so that the plaintiff could not question Rand's title or obtain title adverse to him. Defendant cites Section 28–0112, NDRC 1943, which reads as follows:

"Whenever the relation of landlord and tenant shall have existed, the possession of the tenant shall be deemed the possession of the landlord, until the expiration of twenty years from the termination of the tenancy, or, when there has been no written lease, until the expiration of twenty years from the time of the last payment of rent, notwithstanding that such tenant may have acquired another title or may have claimed to hold adversely to his landlord. Such presumption shall not be made after the periods herein limited."

As we construe that statute it means that when the relation of landlord and tenant shall have existed the continued possession of the land by the tenant thereafter shall be presumed to be the possession of the landlord until the expiration of 20 years from the termination of the tenancy or the last payment of rent, even if the tenant has acquired some other title to the property adverse to the landlord. Continued possession by the tenant beginning with the lease is presumed. Jackson ex dem. Vandeusen v. Scissam, 3 Johns., N.Y., 499.

" 'This presumption may be rebutted, but to do so effectually, and initiate an adverse holding, the tenant must surrender the possession to the landlord, or do something equivalent to that, and bring home to him knowledge of the adverse claim.' " Bedlow v. New York Floating Dry-Dock Co., 112 N.Y. 263, 19 N.E. 800, 811, 2 L.R.A. 629, 636; Whiting v. Edmunds, 94 N.Y. 309.

When a tenant has surrendered possession to the landlord resulting in a complete termination of the lease, possession obtained thereafter under a re-entry made under color of title from a different source shows hostility to and is adverse to the former landlord.

With regard to the tenancy of the land involved in this lawsuit the evidence shows that the plaintiff leased these premises from A. U. Anderson, Crosby, North Dakota, agent for the owner, for the term of "from April 12, 1937, until and terminating on the 1st. day of October 1937" for the cultivating and raising "wheat and other small grains." The owner's name does not appear in the lease and plaintiff testifies he never had any connection or contacts with the owner. Plaintiff testified there was a like written lease for the crop season in 1938 and another written lease for 1939. Each was a separate lease commencing about April 1st and terminating October 1st of each year. There is no contradictory testimony on that. It is also supported by the circumstances. The lease was for the purpose of raising grain. There were no buildings on the premises so that whatever grain was raised had to be hauled to market. No summer-fallowing was done on the premises in 1938 or 1939 and there is nothing to indicate that plaintiff retained possession of the premises during the winter season. He disclaims any possession of the premises between Oct. 1st and April 12th each year. Each spring before seeding plaintiff made an emergency seed loan from the Farm Credit Administration. To obtain such loan plaintiff had to have a waiver from the owner so that the government would have a preferred lien. In each case Anderson obtained such waiver from Rand. Each year these applications and waivers were made about the time the new leases were made. Such loans undoubtedly were necessary to assure seed before he could operate the land. There were no buildings on the land to keep seed over winter. Such loan proceedings cannot be said to have had anything to do with the possession of the premises prior to the date of the commencement of the lease each year. Plaintiff made no preparation on the

land in 1939 for the 1940 crop season nor did he ask Anderson to get him a waiver for a seed loan in 1940. Plaintiff's testimony in regard to these matters is undisputed and positive.

According to that testimony the last lease from Rand expired Oct. 1, 1939, under the terms of the lease. Sec. 47–1614, NDRC 1943, provides that leasing of real property terminates:

"1. At the end of the term agreed upon;

"2. By the mutual consent of the parties;

"3. By the lessee's acquiring title to the property leased superior to that of the lessor; or

"4. By the destruction of the property leased."

■ A lease is terminated by the expiration of the term of the tenancy as fixed by the lease without any notice unless required by the statute. 51 C.J.S., Landlord and Tenant, § 89, p. 648. The statute above cited provides that the leasing of real property terminates at the end of the term agreed upon. No notice is required.

■ Both the evidence and the law show that the relation of landlord and tenant between Rand and the plaintiff absolutely terminated on Oct. 1, 1939. His tenancy was not in any sense continued after that date.

Divide County obtained deed to the premises on March 2, 1940. The plaintiff, on March 5, 1940, rented the premises from Divide County and re-entered as a tenant of Divide County. In November he bid the land in at the regular tax sale and received a contract for deed on March 23, 1942. He has since then been in possession of the premises and paid the taxes up to the 18th day of April 1952 when this action was commenced.

■ The plaintiff re-entered the land after his tenancy from Rand was terminat-

ed and, therefore, any presumption that may have been created by Sec. 28–0112, NDRC 1943, was rebutted.

There are numerous facts and circumstances of which Rand had or should have had knowledge which indicate that the plaintiff was claiming adversely.

On the 12th day of January 1939, the county auditor of Divide County issued a notice of expiration of period of redemption to Bernard P. Rand as the owner of the premises in question, stating that the premises had been offered for sale Dec. 9, 1930, and sold to the county, and that unless redemption was made within 90 days from the date of the notice deed would be issued to the county, and stating the amount required to redeem was a total of $1018.29. This notice included the 1937 and 1938 taxes.

■ The evidence shows a registry receipt from the postoffice to the effect that the county auditor of Divide County registered a letter on Feb. 25, 1939, addressed to Bernard P. Rand, 616 South June St., Los Angeles, Cal., and a return registry receipt card, signed, Bernard P. Rand by "Mrs. B. P. Rand. (Signature of Addressee's agent), Jan. 30, 1939." This registry receipt and the return registry receipt card were in the files attached to the original notice of expiration of the period of redemption. The present county auditor testifies that that shows that the notice of the expiration of the period of redemption was mailed as required by law to Bernard P. Rand by registered mail as shown by the registry receipt and received by Rand as the registry return receipt card shows. In other words the receipts were attached to the original notice of expiration of the period of redemption as proof of what had been done with it. The presumption is that "official duty has been performed regularly." Subsection 15, Section 31–1103, NDRC 1943. That presumption is supported by these receipts dated at the time the notice should have been sent out and the further fact that on the return registry receipt is inscribed, "SW¼, 11–163–97," indicating the descrip-

tion of the land in question. Coulter v. Ramberg, 79 N.D. 208, 55 N.W.2d 516. This evidence shows that Rand received the notice.

The testimony further warrants the inference that A. U. Anderson, Rand's agent, from whom plaintiff received his leases, was still in business at Crosby. He knew that plaintiff's lease expired according to the terms thereof on Oct. 1, 1939, and that plaintiff made no arrangements to lease the property from Rand for 1940. He knew he received no rent from Wilson for Rand after 1939.

In the ALI Restatement of the Law on Agency, Section 381, p. 844, the following rule is laid down:

"Unless otherwise agreed, an agent is subject to a duty to use reasonable efforts to give his principal information relevant to affairs entrusted to him which, as the agent has notice, the principal would desire to have and which can be communicated without violating a superior duty to a third person."

As Rand's agent it was Anderson's duty to keep track of what was happening to the land he was looking after and to inform Rand thereof. It must be presumed he did his duty.

Furthermore, the record shows that Rand had not paid his taxes for ten years. He is charged with knowledge that if he failed to pay his taxes the county would sell the land and acquire title thereto. Cota v. McDermott, 73 N.D. 459, 16 N.W. 2d 54, 155 A.L.R. 1271; Mayer v. Ranum, 75 N.D. 548, 549, 30 N.W.2d 608. In Nind v. Myers, 15 N.D. 400, 109 N.W. 335, 341, 8 L.R.A.,N.S., 157, it is said:

"A tax sale is an official act which is presumptively valid, and hence prima facie divests the original owner's title and right to possession. So, also, adverse possession has the same effect. In either case the landowner is chargeable with notice of the adverse claim, and remedies are available to him to attack the validity of the presumptively lawful adverse title. In either case the original owner has the burden of showing that the adverse claim is invalid. It violates no essential of due process of law to declare that the presumptively valid adverse claim shall become conclusive, if the landowner neglects to challenge it within the prescribed time."

In the case at bar the owner paid no attention to the notice of the expiration of the period of redemption. While that notice showed on its face that it was ineffective to cut off his right of redemption it still was notice to Rand that the county was doing something about the collection of his taxes and asserting a claim over his land. He made no effort to question the validity of the proceedings. He took no steps towards paying his taxes. He made no demand for rents from Wilson. He lived ten years after he received the notice of the expiration of the period of redemption without showing any interest at all in this land. Rand's lack of action indicates his acquiescence in his loss of title and possession of this land and of the adverse occupancy thereof after that loss because of his failure to pay his taxes.

"Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact and who omits to make such inquiry with reasonable diligence is deemed to have constructive notice of the fact itself." Section 1-0125, NDRC 1943.

"Although it has been held that a tenant cannot convert his occupancy into an adverse holding without actual notice to the landlord, usually, unless a statute so requires, actual notice of an adverse holding need not be brought home to the landlord. Notice may be constructive, and may be shown by a variety of acts clearly indicating a holding by the tenant, hostile to that of the landlord, and, if acts are relied

on, they will be presumed to have been brought home to a landlord when the adverse occupancy and claim of title are so long continued, open, notorious, exclusive, and inconsistent with the existence of title in others except the occupant that the law will raise the inference of notice to a landlord out of possession." 51 C.J.S., Landlord and Tenant, § 284, p. 938.

Clearly the evidence warrants the conclusion that Rand had notice not only of the expiration of the plaintiff's lease, and the termination of his possession, but also of the tax proceedings, his own loss of title and the adverse possession thereafter.

Defendant claims that plaintiff failed in his duties to his landlord during those tenancies under Rand because he did not forward to Rand a copy of the notice of the expiration of the period of redemption, and that, therefore, he cannot now question Rand's title. Defendant cites Section 47–1625, NDRC 1943, which reads:

"Every tenant who receives notice of any proceeding to recover the real property occupied by him, or the possession thereof, must:

"1. Inform his landlord immediately of the notice; and

"2. Deliver the notice to the landlord.

"The tenant shall be responsible to the landlord for all damages which the landlord may sustain by reason of any omission by him to inform the landlord of the notice or to deliver it to him, if such notice is in writing. The attornment to a stranger is void unless made with the consent of the landlord or in consequence of a judgment of a court of competent jurisdiction."

The notice of the expiration of the period of redemption did not name plaintiff as the person in possession of the premises. Nevertheless the sheriff, in his return, stated that he was in possession and that he served the notice upon him "by then and there handing to and leaving with his mother, personally, a true and correct copy thereof on the 25th. day of January 1939." As has been heretofore shown plaintiff was not a tenant of Rand at that time and was not in possession of the premises. He owed no duty to Rand under this statute. The tax deed cannot be said to have been taken on account of any failure of plaintiff in his duties as tenant. Defendant cannot therefore question plaintiff's title to the premises on that ground. Hebden v. Bina, 17 N.D. 235, 241, 116 N.W. 85, 86; Wood v. Homelvig, 68 N.D. 735, 283 N.W. 278.

It is conceded, however, that the tax deed secured by Divide County was void and amounted only to color of title. All that time, therefore, the legal title was in Rand. The question then arises whether the possession of the plaintiff under color of title is sufficient to make the plaintiff's possession adverse to the legal owner, Rand.

This court in Grandin v. Gardiner, N.D., 63 N.W.2d 128, 132, said:

"Color of title is sufficient to support possession as being adverse. Power v. Kitching, 10 N.D. 254, 86 N.W. 737, 88 Am.St.Rep. 691. A tax deed issued by the county auditor, although void on its face, is sufficient to confer on the grantee color of title which will support actual adverse possession under the provisions of Section 47–0603 NDRC 1943, as amended. Woolfolk v. Albrecht, 22 N.D. 36, 133 N.W. 310." See also Robertson v. Brown, 75 N.D. 109, 25 N.W.2d 781.

In Buswell's Limitations and Adverse Possession, Section 259, p. 359, it is said:

"Any deed, though unrecorded, purporting to convey title, no matter on what founded, gives color of title, and this is the rule although the deed be defective, for the character of the vendee's possession, as adverse, is not affected by the defects of his title; and

if the entry be under color of title, the possession will be adverse, however groundless the supposed title may be."

 The contract from Divide County conferred on the plaintiff color of title. Plaintiff entered into possession of the premises after termination of his lease from Rand under this color of title. His possession thereunder was adverse as to Rand, the legal owner.

 The evidence shows that the failure to pay the taxes which resulted in the tax deed was not in any way due to the plaintiff in this action while he was tenant of Rand. The tenancy between plaintiff and Rand was completely terminated on Oct. 1, 1939. Plaintiff retained no possession after that. It was not until March 5, 1940 that plaintiff resumed possession of the land under tenancy from Divide County, and while the county's deed was void it gave color of title and under that the possession of the plaintiff was adverse. Rand had knowledge thereof. The evidence shows clearly that the plaintiff had been in actual, open and undisputed possession of the land in question adverse to Rand and everybody else for the statutory length of time and paid the taxes.

Section 47-0603, NDRC 1943 as amended by Chapter 276, SLND 1951, provides:

"A title to real property, vested in any person or those under whom he claims, who shall have been in the actual open adverse and undisputed possession of the land under such title for a period of ten years and who shall have paid all taxes and assessments legally levied thereon, shall be valid in law. A contract for deed shall constitute color of title within the meaning of this section from and after the execution of such contract."

The judgment of the District Court is affirmed.

BURKE, C. J., and JOHNSON, SATHRE, and MORRIS, JJ., concur.